MORENO J. CAPARRELLI AND JEANNE E. CAPARRELLI, HIS WIFE, PLAINTIFFS-APPELLANTS, v. ROLLING GREENS, INC., A CORPORATION OF THE STATE OF NEW JERSEY, DEFENDANT-RESPONDENT.

Argued February 5, 1963—Decided April 23, 1963.

---

*Mr. Ira Rabkin* argued the cause for plaintiffs-appellants.

*Mr. Morrey Lacklman* argued the cause for defendant-respondent.

The opinion of the court was delivered by

HANEMAN, J. Plaintiffs, purchasers of a dwelling house, seek the recovery of damages from defendant vendor, resulting from claimed faulty construction. The action is based upon alleged express and implied warranties of the defendant. After trial in the Camden County District Court, without a jury, judgment was entered for defendant. Plaintiffs appealed to the Appellate Division. We certified on our own motion before argument in the Appellate Division. *R. R.* 1:10–1(a).

The facts are as follows: In July 1958 defendant, engaged at the time in the construction of dwelling houses for sale on a tract of land which it was developing in Cinnaminson Township, erected the dwelling here involved. Until June 25, 1959, the house was used as a sample for display to potential purchasers of properties in defendant's development. On May 28, 1959 plaintiffs entered into an agreement to purchase said house. Possession was delivered to plaintiffs as lessees on June 25, 1959. Final settlement and conveyance of title occurred on July 28, 1959, at which time defendant delivered a "Warranty of Completion of Construction in Substantial Conformity with Approved Plans and Specifications," which provided, in part:

"The dwelling located on the property identified in the caption hereof is constructed in substantial conformity with the plans and specifications (including any amendments thereof, or changes and variations therein) which have been approved in writing by the Federal Housing Commissioner or the Administrator of Veterans Affairs on which the Federal Housing Commissioner or the Administrator of Veterans Affairs based his valuation of the dwelling: *Provided, however,* That this warranty shall apply only to such instances of substantial nonconformity as to which the Purchaser(s)/Owner(s) or his (their) successors or transferees shall have given written notice to the Warrantor at any time or times within 1 year from the date of original conveyance of title to such Purchaser(s)/Owner(s) or the date of initial occupancy of the dwelling, whichever first occurs: *Provided further, however,* That in the event the Purchaser(s)/Owner(s) acquired title to the captioned property prior to the completion of construction of the dwelling thereon, such notice of nonconformity to the Warrantor may be given at any time or times

within 1 year from the date of completion or initial occupancy of such dwelling, whichever first occurs.

\* \* \* \* \* \* \* \*

This warranty shall be in addition to, and not in derogation of, all other rights and privileges which such Purchaser(s)/Owner(s) may have under any other law or instrument, and shall survive the conveyance of title, delivery of possession of the property, or other final settlement made by the Purchaser(s)/Owner(s), and shall be binding on the Warrantor notwithstanding any provision to the contrary contained in the contract of purchase or other writing executed by the Purchaser(s)/Owner(s) heretofor or contemporaneously with the execution of this agreement or prior to final settlement.

\* \* \* \* \* \* \* \*

NOTICE TO PURCHASER: Any notice of nonconformity must be delivered to the Warrantor no later than June 25, 1960. (*Warrantor shall insert date 1 year from initial occupancy, date of conveyance of title or date of completion, whichever event is applicable.*)"

Approximately 60% of the basement was panelled and was furnished as living quarters on the date of sale. At the time the agreement of sale was negotiated, Moreno Caparrelli, one of the plaintiffs, called the attention of defendant's president, Dinerman, to the presence of moisture on the walls and floor of this panelled area. Dinerman remarked that the condition was a result of keeping the house closed and that the moisture would disappear after the premises were inhabited and the doors and windows were opened. Dinerman further asserted that the panelled section of the basement was a habitable area of the house, usable for normal daily activity.

The moisture condition did not abate, and in August 1959, plaintiffs installed an air conditioner-dehumidifier unit in an attempt to alleviate the condition. In September 1959, after a heavy rainstorm, the basement was flooded with several inches of water. Shortly thereafter, Moreno Caparrelli orally called this occurrence to the attention of Dinerman and asked for help in rectifying the situation. No action was forthcoming from defendant. Although the inundation subsided, the moisture condition gradually worsened during the 15 or 16 succeeding months. By Christmas of 1960, plaintiffs continuously were forced to keep towels, rags, and similar materials at the baseboard in order to absorb the percolating

water. On several occasions between September 1959 and December 25, 1960, plaintiffs requested defendant's aid in alleviating the condition, but to no avail. The presence of moisture and water prevented plaintiffs and their family from ever using the basement for normal daily activity.

On the morning of January 1, 1961, plaintiffs awoke to find three to four inches of water on the basement floor and water pouring over the baseboard. After the plaintiffs' neighbors assisted in pumping the water out of the cellar, they joined in excavating along the exterior foundation wall, adjacent to the room here involved. It was then discovered that there was no parging on the foundation wall and that no cove had been constructed at the intersection of the concrete footing and the cinderblock wall, both of which were required by the specifications filed with the Federal Housing Administration.

Plaintiffs thereupon orally reiterated their request for aid from Dinerman, who denied liability and attributed the condition to plaintiffs' installation of the air conditioner-dehumidifier and their construction of a flower bed in the lawn. The trial court specifically found against defendant on this attempted shift of responsibility.

Plaintiffs subsequently corrected the condition and brought this suit for expenditures incident thereto. No written notice of the water condition in the basement was given defendant until the service of the complaint in this action on May 13, 1961. They bottom their action on three alternative theories, each involving a breach of an alleged warranty, i. e., (1) an express oral warranty made by Dinerman at the time the agreement to purchase was negotiated; (2) the express written warranty delivered at the time of final settlement and closing; (3) an implied warranty of fitness for use. The trial court found against plaintiffs for the following reasons: (1) notice of the breach of the oral warranty was not given within a reasonable time in view of the fact that the conversation between plaintiffs and Dinerman in September 1959, and the subsequent oral entreaty, constituted "requests for aid"

rather than "demands" for relief tantamount to notice; and (2) no written notice was given under the written warranty within the time provided. Holding that there was a lack of timely notice, the court had no reason to determine whether an implied warranty in the sale of real estate existed. We shall address ourselves to plaintiffs' right to recover on the alleged oral warranty.

### I.

The trial court found

"that an oral warranty was given to the plaintiffs by the defendant at the time the agreement of sale was negotiated, and as admitted by the defendant in its answers to interrogatories, that the panelled area of the basement was a habitable area of the dwelling house, usable for normal daily activity, if so desired; * * * that the water, in substantial quantities covered the basement floor as early as the month of September, 1959, and the dampness and water condition persisted down to the date of the filing of the suit in February, 1961. * * * [T]here seems to be no doubt in my mind that there was a breach of warranty, both the oral and the written. * * * Both the dampness and the water condition made it impossible for the plaintiffs to use the panelled area for normal daily human activity, if so desired."

We discover no reason to disturb those findings. See *Abeles v. Adams Engineering Co., Inc.*, 35 *N. J.* 411, 423–424 (1961).

### A.

We proceed initially to defendant's argument that if such warranty did exist it merged in the deed.

The question of whether the oral warranty violated the parol evidence rule, see *Naumberg v. Young*, 44 *N. J. L.* 331 (*Sup. Ct.* 1882), was not raised and is not before us.

It is generally recognized that the·acceptance of a deed for lands is to be deemed *prima facie* full execution of an executory contract to convey, unless the contract contains a covenant collateral to the deed. *Dieckman v. Walser*, 114

N. J. Eq. 382, 385–386 (E. & A. 1933); 8 Thompson, Real Property § 4550, p. 461 (1940); id., supp., p. 61 (1962); Annot. 38 A. L. R. 2d 1310 (1954), and cases cited therein. This rule of merger satisfies and extinguishes all previous covenants which relate to or are connected with the title, possession, quantity or emblements of the land. Contemporaneously, those covenants in the antecedent contract which are not intended by the parties to be incorporated in the deed, or which are not necessarily satisfied by the execution and delivery of the deed, are collateral agreements and are preserved from merger. *Dieckman v. Walser, supra; Deerhurst Estates v. Meadow Homes, Inc.,* 64 *N. J. Super.* 134 (*App. Div.* 1960). The test herein is whether the alleged collateral agreement is connected with the title, possession, quantity, or emblements of the land which is the subject of the contract. The oral warranty has no relationship to "the title, possession, quantity or emblements of the land." It concerns the habitability of the basement room. The nature of the agreement itself prevented its discharge by the delivery of the deed since it constituted a representation as to a condition which existed at the time it was made and which would persist for a reasonable time after title was delivered to plaintiffs. The warranty therefore survived the delivery of the deed as a collateral undertaking. See *Weinberg v. Wilensky,* 26 *N. J. Super.* 301, 305 (*App. Div.* 1953).

The Court unanimously agrees that there was an oral warranty which did not merge in the deed, and that there was a breach of such warranty.

## B.

The second question arises out of plaintiffs' conversation with Dinerman in September 1959 and the finding of the trial court that it constituted inadequate notice of the breach of the oral warranty.

A majority of the court would reverse the judgment below without passing upon the question of the necessity for

plaintiffs to give notice of breach upon the ground that plaintiffs, in any event, gave adequate notice of the basement's defective condition within a reasonable time, when they reported the flooding to defendant in September 1959 and asked for defendant's help in order to clear up the situation. They say that "requests for aid" can be quite as effective as a "demand" in calling to the attention of the warrantor facts showing that his warranty has been breached. So here, the conversation in September 1959 was sufficient notice of the alleged breach.

The writer of this opinion and Justice Schettino, however, conceive that before deciding the question of the adequacy of notice, it must be determined whether plaintiffs were *required* to give any notice of breach as a condition precedent to the generation of liability for such breach.

It must be remembered that defendant does not argue that plaintiffs accepted the dwelling in its alleged defective condition in full satisfaction of its obligations, thus waiving the necessity of defendant's compliance with the warranty. Nor does defendant argue that plaintiffs' failure to give timely notice after the breach occurred is evidential of acceptance and the resultant waiver of compliance. Consequently, the effect of the failure to give timely notice upon the question of acceptance and waiver is not here an issue, see *Weinberg v. Wilensky, ibid*; 5 *Williston, Contracts* §§ 700 to 724 (*3d ed.* 1960), and the issue is restricted to whether notice of breach was required to be given in order to generate liability on defendant's part.

The concept that a buyer must give notice to a seller of a breach of warranty, within a reasonable time after the promisee knows thereof, in order to hold the warrantor liable for such breach, arises by virtue of the provisions of the Uniform Sale of Goods Law, *N. J. S.* 12A:2–607 (3) (a). Prior to the adoption of the Uniform Sale of Goods Law, acceptance of goods without protest, under the laws of many of the states, was regarded as full satisfaction of all the seller's obligations. 3 *Williston, Sales* § 484a (*rev. ed.* 1948). Notice or protest

of the receipt of defective goods was important only as evidence of whether the goods had been accepted. *Ibid.* Other states held that acceptance of the goods would not bar a recovery unless there was an intent to waive the seller's obligation. *Ibid.* Notice was then important on that question.

In this State, under common law, a buyer was not restricted to the remedy of rescission for breach of warranty, where the buyer's situation had changed and repudiation had become impossible. Even after acceptance of the goods, he could sue for damages resulting from a breach of contract, *Wolcott, Johnson & Co. v. Mount*, 36 *N. J. L.* 262 (*Sup. Ct.* 1873), aff'd 38 *N. J. L.* 496 (*E. & A.* 1875), and prior notice was not necessary to maintain the action. *Walters v. Shields*, 26 *N. J. L. J.* 49 (*C. P.* 1902). It was with the advent of the Uniform Sale of Goods Law that notice became an "absolute condition" of an action for breach of warranty. *Williston, Sales, ibid.* Thus, in its proper perspective, the requirement for notice of breach by the warrantee as a condition to the creation of liability has a statutory genesis and pertains solely to a warranty in connection with a sale of chattels. Absent express provision to the contrary, it is inapplicable for that purpose where, as here, the warranty relates to a sale of realty.

An oral "warranty" connotes a promise "that what is being promised and what the promisee is being led to expect on the part of the promisor, is indemnification against loss, in case the facts turn out to be not as represented." 1 *Corbin, Contracts* § 14 (1950). See *Wolcott, Johnson & Co. v. Mount, supra; Skirm v. Hilliker*, 66 *N. J. L.* 410 (*Sup. Ct.* 1901); cf., *Metropolitan Coal Co. v. Howard*, 155 *F. 2d* 780, 784 (2 *Cir.* 1946). It was in that sense that the trial judge employed the words "oral warranty." Dinerman's warranty is a simple contract that the house was so constructed as to render the basement room habitable for normal daily activity for a reasonable time after title was delivered to plaintiffs, and to indemnify plaintiffs against loss in the event that his repre-

sentation was untrue. The inundation of the cellar in September 1959 and the continued flooding and moisture for 16 months thereafter constitute a breach of that agreement.

Ordinarily, the breach of a contract gives immediate rise to a cause of action against the defaulting party without prior notice of such breach to the defaulting party. *Friedlander v. Gross*, 63 *N. J. Super.* 470, 474 (*App. Div.* 1960); 3A *Corbin, supra*, § 724. But *cf., id.* § 727; 6 *Williston, Contracts* § 2004 (*rev. ed.* 1938). So here, plaintiffs became immediately entitled, in September 1959, to indemnification without being required to advise defendant of a breach as a condition precedent. Prior notice was therefore not required to give rise to defendant's liability for a breach.

## II.

In the light of the foregoing we are not required to pass upon plaintiffs' other alleged bases of recovery. Hence we need not consider the troublesome question whether there should be an implied warranty of fitness for habitation in the sale of realty, at least where the subject is a new dwelling. See *Levy v. C. Young Construction Co.*, 26 *N. J.* 330, 334 (1958); Bearman, "Caveat Emptor In Sales of Realty—Recent Assaults Upon the Rule," 14 *Vand. L. Rev.* 541, 543–547 (1961); 19 *Modern L. Rev.* 544 (1956).

Reversed and remanded for entry of judgment for plaintiffs in the stipulated amount of $1,000.

*For reversal*—Chief Justice WEINTRAUB, and Justices JACOBS, FRANCIS, PROCTOR, HALL, SCHETTINO and HANEMAN —7.

*For affirmance*—None.