257 N.J. Super. 69 (1992)
607 A.2d 1346
MARYANN ANDREYCHAK AND DEBBI M. BLACK, PLAINTIFFS-APPELLANTS,
v.
ELAINE LENT, DEFENDANT-RESPONDENT, AND A.R. ZIMMER, INC., A NEW JERSEY CORPORATION, DEFENDANT.
Superior Court of New Jersey, Appellate Division.
Argued April 28, 1992.
Decided June 11, 1992.
*70 Before Judges ANTELL, BAIME and THOMAS.
Robert T. Costello argued the cause for plaintiffs; Robert T. Costello on the brief.
William C. Herrmann argued the cause for respondent, Elaine Lent; William C. Herrmann on the brief.
The opinion of the court was delivered by THOMAS, J.S.C., temporarily assigned.
Plaintiffs' action for damages to repair a malfunctioning septic system was dismissed at the conclusion of plaintiffs' proofs. This appeal resulted and we reverse.
Plaintiffs contracted to purchase a 45-year-old single family home from defendant Lent. The parties knew when the purchase contract was signed that the septic system was not working. Therefore, a handwritten addendum was added requiring the septic system to be brought up to township codes by seller prior to closing. Title closed on December 30, 1985 with $500.00 held in escrow to be used to complete surface grading and seeding over the new septic system. Prior to closing, defendant Lent produced a certificate dated December 9, 1985 from the Township Board of Health certifying that the work done to the septic system by codefendant Zimmer had been performed according to code. In fact, it had not. Plaintiffs relied on the certificate and accepted a deed and closed title. As it turns out, none of the percolation tests, upon which the effectiveness of a septic system is judged, passed the minimum Township code standards. In fact, no measurable *71 rate of percolation was obtained at all. In spite of the fact that the septic system did not comply with the Township code, a Certificate of Compliance was issued.
Shortly after moving into the home, plaintiffs began experiencing problems with raw sewage flowing from the septic tank onto the ground surface. Plaintiffs contacted defendant Zimmer who offered a number of reasons as to why the system was not working. However, each "correction" completely failed to ameliorate the problem. The problem became so acute, the Township cited plaintiff for violation of the health code for discharging sewage onto the ground. Finally, defendant Zimmer conceded that only a raised bed system would satisfactorily make the system work, an expensive proposition which neither of the defendants wished to pay for.
Plaintiffs obtained the services of a civil engineer to examine the system. He found many problems contributing to the system's inability to function. They included a ground water condition which was virtually level with the surface and a soil profile containing only impermeable material. He conducted percolation tests which confirmed the results improperly approved by the Township i.e., there was no measurable rate of percolation. The septic tank itself was opened. Nothing was found wrong with the tank but because the surrounding soil conditions would not accept effluent, the tank was doing just that, performing as a tank. When its 1,000 gallon capacity was reached, raw sewage overflowed from the top onto the ground surface. Plaintiffs' expert concluded the system, as installed, stood no chance of working from the first instance. He concurred with defendant Zimmer's admission that a raised bed system would have to be installed. Plaintiffs have submitted plans to repair the system and have received a permit approving these plans from the Township. Plaintiffs offered proof as to what this would cost.
The trial judge granted defendant's motions to dismiss at the conclusion of plaintiffs' proofs, finding no fraud, warranty, or *72 breach of contract. He also held that the acceptance of the deed by plaintiffs terminated any further rights between the parties, thereby applying the rule of "merger".
The traditional doctrine of merger holds that in real estate transactions, all warranties and representations made in connection with a sale, unless specifically reserved to hold over after the passage of title, are merged into the deed.
It is generally recognized that the acceptance of a deed for lands is to be deemed prima facie full execution of an executory contract to convey, unless the contract contains a covenant collateral to the deed. (Citations omitted). This rule of merger satisfies and extinguishes all previous covenants which relate to or are connected with the title, possession, quantity or emblements of the land. Contemporaneously, those covenants in the antecedent contract which are not intended by the parties to be incorporated in the deed, or which are not necessarily satisfied by the execution and delivery of the deed, are collateral agreements and are preserved from merger. (Citations omitted). The test... is whether the alleged collateral agreement is connected with the title, possession, quantity, or emblements of the land which is the subject of the contract.
Caparrelli v. Rolling Greens, Inc., 39 N.J. 585, 590-591, 190 A.2d 369 (1963). Defendant relies on this rule citing Levy v. C. Young Construction Co., Inc., 46 N.J. Super. 293, 296, 134 A.2d 717 (App.Div. 1957), aff'd on other grounds, 26 N.J. 330, 139 A.2d 738 (1958).
[T]he acceptance of a deed by the purchaser from the vendor terminates the contractual relationship between the parties, and their respective rights and liabilities are thereafter determined solely by the deed and not by the contract of sale [which is the] .. . prevailing law throughout the country.
In Levy, plaintiff brought suit three years after purchasing a new home to recover the cost of replacing an improperly installed sewer line. The court denied liability because there was no express covenant requiring a well-built home and in doing so, applied merger and the rule of caveat emptor. The Levy court held there were no implied warranties passing with the sale of the home but reasoned that people could adequately protect themselves by expressly providing for the survival of warranties after the closing.
Defendant's reliance on Levy is totally misplaced. That decision was severely criticized in Schipper v. Levitt & Sons, *73 Inc., 44 N.J. 70, 207 A.2d 314 (1965). We later overturned Levy in McDonald v. Mianecki, 159 N.J. Super. 1, 18, 386 A.2d 1325 (App.Div. 1978), aff'd, 79 N.J. 275, 398 A.2d 1283 (1979):
This court is also convinced that the policy reasons used in Levy to support the traditional doctrines of merger and caveat emptor are no longer viable....
We are satisfied, under the circumstances of this case, that the law of merger or the doctrine of caveat emptor should not apply.
Factually, McDonald was a case in which plaintiffs purchased a newly constructed home and from the inception of their occupancy experienced unsolvable problems with their well water and its system. We held that plaintiff could recover based upon a breach of implied warranty arising out of their purchase contract even though the contract was silent as to which condition survived the passage of title.
The Supreme Court, in its affirmance, sustained the implied warranty theory of recovery and went on to rule that a potable water supply was an item encompassed within an overall implied warranty of habitability. It also used the occasion to do away with the theory of caveat emptor. These rulings in McDonald were expressly held to apply where the sale involved a new home. "[W]e do not address questions regarding the applicability of implied warranties to the sale of used houses." McDonald v. Mianecki, supra, 79 N.J. at 295, n. 5, 398 A.2d 1283. And see Aronsohn v. Mandara, 98 N.J. 92, 104, 484 A.2d 675 (1984) refusing to apply the principle to a used house, and referring to Hermes v. Staiano, 181 N.J. Super. 424, 432, 437 A.2d 925 (Law Div. 1981) which did.
We now hold an implied warranty of habitability should also apply to the sale of a "used" home. Such is so under the philosophy, "... that our law should be based on current notions of what is `right and just.'" Weintraub v. Krobatsch, 64 N.J. 445, 456, 317 A.2d 68 (1974). Today, implied warranties not only apply to the sale of new homes but also apply to the sale of personal property, N.J.S.A. 12A:2-314, -315, and the leasing of residential premises, Marini v. Ireland, 56 N.J. 130, 144, 265 A.2d 526 (1970). They should not less apply *74 to the sale of "used" homes. We also hold that a properly working septic or sewer system is an item included within the implied warranty of habitability. We do not, at this time, rule on what time limitation, if any, should be placed on the warranty. There is no problem with time in this case since the evidence shows the septic problem disclosed itself almost immediately after plaintiffs entered into occupancy.
Defendant argues for affirmance relying upon the contract's provision permitting plaintiffs to inspect the premises before closing. Here such examination would have been useless because the malfunction would not become evident until the 1,000 gallon tank had reached capacity and overflowed. Also, the plaintiffs were entitled to rely on the Board of Health Certificate, albeit improperly issued. In addition, plaintiffs introduced expert testimony that the system as installed was defective and would never work.
Lastly, we refer to the well established standard for reviewing motions made to dismiss at the close of plaintiffs' proofs. In Wagner v. Deborah Heart & Lung Center, 247 N.J. Super. 72, 77, 588 A.2d 860 (App.Div. 1991), we said:
The standard for determining a motion for involuntary dismissal at the conclusion of the plaintiff's case under R. 4:37-2(b), requires the court to accept as true all the evidence which supports the position of the party opposing the motion and to accord that party the benefit of all inferences which can reasonably be drawn therefrom. If reasonable minds could differ, the motion must be denied. (Citation omitted). The judicial function is a mechanical one. "The trial court is not concerned with the worth, nature or extent (beyond a scintilla) of the evidence, but only with its existence, viewed most favorably to the party opposing the motion." (Citation omitted).
We refer to this standard because even under the traditional application of the merger rule a jury question exists in this case as to whether the septic system agreement contained in the sales contract was a collateral agreement and therefore preserved from merger. A jury could also conclude that defendant Zimmer had falsely obtained the Board of Health Certificate *75 used to certify the system. These were issues that should have been left to the jury for resolution.
We also note for the benefit of retrial that:
A suit for damages is a well established remedy available to a transferee of real property when the transferor has failed to discharge its legal obligations. If a seller of real property breaches warranties, a purchaser ordinarily has the option of either rescinding the transaction or ratifying it and suing for money damages.
Dixon Venture v. J. Dixon Crucible, 235 N.J. Super. 105, 110, 561 A.2d 663 (App.Div. 1989), certif. granted, 118 N.J. 204, 570 A.2d 965 (1989), modified and aff'd, 122 N.J. 228, 584 A.2d 797 (1991).
We were advised at oral argument that plaintiffs have settled their claim against defendant Zimmer. It was for that reason Zimmer did not participate in the appeal. The decision of the trial court is reversed and the matter remanded for retrial as to defendant Lent.