**BRETT JEFFERSON, Plaintiff**

**v.**

**BAY ISLES ASSOCIATES, L.L.L.P, BRECKINRIDGE CONSTRUCTION VIRGIN ISLANDS, INC., DAVID BAND, Individually, KELLY FRYE, individually, BILL TERRY, individually, ABLE, BAND, RUSSELL, PITCHFORD & GORDON, CHARTERED, KANE FURNITURE CORPORATION, Defendants**

Civil No. ST-09-CV-186

Superior Court of the Virgin Islands

Division of St. Thomas and St. John

February 1, 2011

32

35

MICHAEL SHEESLEY, ESQ., Kevin F. D'Amour, P.C., St. Thomas, USVI, *For Plaintiff Brett Jefferson.*

MATHEW J. DUENSING, ESQ., JOHANNA HARRINGTON, ESQ., Stryker, Duensing, Casner & Dollison, St. Thomas, USVI, *For Defendants Breckinridge, Construction Virgin Islands, Inc., Kelly Frye and Bill Terry.*

SIMONE R.D. FRANCIS, ESQ., St. Thomas, USVI, *For Defendants Bay Isles Associates, L.L.L.P. and David Band.*

TRESTON MOORE, ESQ., Moore, Dodson, and Russell, P.C., St. Thomas, USVI, *For Defendants Abel, Band, Russell, Pitchford, & Gordon Chartered.*

HOLLAR, *Administrative Judge*

## MEMORANDUM OPINION

(February 1, 2011)

## I. INTRODUCTION

On June 19, 2009, Bay Isles Associates, LLP and David Band filed a motion to dismiss this action pursuant to FED. R. CIV. P. 12(b)(6). Plaintiff

Brett Jefferson filed an opposition on August 6, 2009, requesting the Court to deny Defendants' Motion to Dismiss.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On April 19, 2009, Plaintiff Brett Jefferson brought an action against the Defendants Bay Isles, Associates, L.L.L.P. ("Bay Isles" or "Seller"), Breckinridge Construction Virgin Islands Inc. ("Breckinridge" or "Builder"), David Band, Kelly Frye, Bill Terry, Abel, Band, Russell, Collier, Pitchford, & Gordon, Charter ("Able Band" or "Escort agent")[1] and Kane Furniture Corporation ("Kane Furniture") for breach of contract, fraudulent and negligent misrepresentation and unjust enrichment.

In his complaint, Plaintiff Jefferson alleges that on December 28, 2004, he signed a sales and purchase agreement ("Purchase Agreement" or "SPA") with Defendants Bay Isles and Abel Band to purchase a condominium unit, later designated as unit B-203 ("the Unit"), in the Grand Bay Resort ("Resort") located in Cruz Bay, St. John, U.S. Virgin Islands. According to the parties' agreement, Plaintiff would pay an earnest money deposit to an escrow agent, with the balance of the purchase price paid at closing. In exchange for the purchase price, Bay Isles would deliver a Special Warranty Deed. Defendant David Band signed the agreement on behalf of Bay Isles ('the seller'), while Kathryn Car signed on behalf of Abel Band, the escrow agent.

During the signing of the agreement, Plaintiff Jefferson alleges that Defendants David Band and Kelly Frye on behalf of Breckinridge, ('the builder'), gave him marketing materials and made several representations to him regarding the resort's features, programs and amenities. It was further explained to Plaintiff that in order to participate in the resort's on-site rental program, he would have to furnish his Unit with a "turn key" furniture package from Kane Furniture, the furniture provider for the resort project. In June 2006, Plaintiff purchased the "turn key" furniture package from Kane Furniture.

On June 11, 2007, Plaintiff signed the Rental Management Pool Agreement after receiving correspondence from Defendants Bay Isles,

---

[1] Since the execution of the purchase agreement, David Band became the President of Abel, Band, Russell, Collier, Pitchford, & Gordon, Charter and the controlling partner of Bay Isles, Associates, L.L.L.P.

Breckinridge, and Able Band regarding the extension of the resort's completion date, terms of the on-site rental management program ("Rental Management Pool Agreement")[2] and the estimated rental rates for his condominium unit under the on-site rental program.

In late 2007, a group of owners of units in the Grand Bay Resort brought a civil action against Defendant Bay Isles. Plaintiff did not join in this action but instead signed an affidavit in support of Bay Isles stating he was unaware of any construction problems and had no concerns about the future rentals and the construction quality of the condominium. Plaintiff did however express concern that the pending litigation would delay the closing and use of his Unit. Defendant Bay Isles later settled with the protesting owners' group but pursuant to their settlement agreement, the owners' group would not join Bay Isles' Rental Management Pool Agreement. This lack of participation by fellow owners was unbeknownst to Plaintiff Jefferson.

In March 2008, Plaintiff Jefferson received an e-mail from Defendant Breckinridge ("the builder") regarding yet another extension of the Resort's completion date. According to the e-mail, construction on units in Building B would be completed by the summer of 2008; however, the reception building and amenities would not be completed until January 2009. Also, during this time Plaintiff's furniture was selected by Defendant Bill Terry, a partner of Breckinridge, and delivered by Defendant Kane Furniture.

In late November 2008, Plaintiff Jefferson received a notice from Defendant Bay Isles, requiring Jefferson to close on the condominium unit within 10 days. On December 1, 2008, Plaintiff's attorney sent two letters to Defendant Bay Isles explaining that pursuant to the purchase agreement Plaintiff was reserving his rights to undertake a unit inspection and complete a punch list *after the closing* of the Unit. Furthermore, the letter explained that Defendant Bay Isles would be required to repair all found defects of the Unit within 20 days of delivery of the punch list.

---

[2] In reviewing the complaint, it appears that "on-site rental management program (24 hrs per day)" as mentioned in the sales brochure is the same as the "rental management pool agreement" mentioned in the parties correspondences.

Defendant Bay Isles never responded to Plaintiff's request to modify the agreement to allow Plaintiff to perform a post-closing inspection.[3]

On December 2, 2008, Plaintiff Jefferson closed on the Unit. Three days later, Plaintiff conducted an inspection of the condominium Unit and the resort. According to Plaintiff, the construction material used on the unit and the building was of "inferior quality" and less than what was represented to him at the execution of the Purchase Agreement on December 28, 2004. Plaintiff further alleges that the unit's furniture was missing, damaged, or of "poor quality," plus the resort amenities' building was not completed. On the same day, Plaintiff also learned for the first time that the Rental Management Pool Agreement was obsolete due to lack of participation by owners. Without Plaintiff's knowledge, many Grand Bay Resort owners elected not to participate in the rental program, which was an option under the 2007 lawsuit settlement agreement.

On December 9, 2008, a letter was sent to Bay Isles expressing concern and dissatisfaction regarding the furniture and demanding a refund of the amount paid by Plaintiff for the furniture. On the following day, Plaintiff Jefferson received an e-mail from Defendant Bill Terry, on behalf Breckinridge. Defendant Terry explained that he was informed by David Band that Bay Isles would not make any changes to Plaintiff's Unit as requested. As a result, items on Plaintiff's punch list went ignored. Moreover, no refund was made from Bay Isles and/or Kanes Furniture for the missing, damaged, and poor quality furnishings.

On April 19, 2009, Plaintiff filed a complaint against the Defendants. Defendants Bill Terry and Kelly Frye filed an answer on June 1, 2009. Defendants Bay Isles and David Band filed a Motion to Dismiss, in lieu of an answer, on June 19, 2009. Plaintiff filed an opposition to the motion to dismiss on August 6, 2009. Defendants' reply was filed on September 8, 2009.

## III. STANDARD OF REVIEW

■ A motion to dismiss a civil complaint is governed by FED. R. CIV. P. 8(a)(2) and 12(6)(b). Rule 8 requires that a complaint must be "a short and plain statement of the claims showing the pleader is entitled to relief."

---

[3] Pursuant to the Purchase Agreement, Plaintiff was required to inspect the Unit and deliver a punch list to Defendant Bay Isles *before* closing.

FED. R. CIV. P. 8(a)(2). If a complaint fails to meet these requirements, Rule 12 allows a court to dismiss the complaint for failure to state a claim upon which relief can be granted. FED. R. CIV. P. 12(b)(6). When ruling on a defendant's motion to dismiss, a court must utilize a "plausibility" standard, which requires a determination of whether a complaint has "enough facts to state a claim of relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plausibility standard requires something more than "mere probability." *Id.* at 556.

 There are two (2) working principles in *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S.Ct. 1937, 173 L. Ed. 2d 868 (2009) that underscore the *Twombly* standard. The first tenet, that "a court must accept as true all of the allegations contained in a complaint[,] is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* The second tenet requires a complaint to provide a plausible claim of relief to defeat a motion to dismiss. *Id.* at 679. This context-specific task requires a court to draw on its own "judicial experiences and common sense." *Id.* "But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not show[n] — that the pleader is entitled to relief." Thus, the complaint would be subject to dismissal. *Iqbal*, at 679 (quoting FED. R. CIV. P. 8(a)(2)).

 In applying the new "plausibility standard," the Third Circuit Court of Appeals not only recognized the shift from simple notice pleading to a more heightened form of pleading, but provided the following summary of the new test in *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. 2009).[4]

> [A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. First, the factual and legal elements of a claim should be separated. The Dis-

---

[4] In *Fowler*, the court reversed the lower court's dismissal of a complaint because it found that the district court had taken the *Twombly* and *Iqbal* rules too far *by applying an evidentiary standard* at the pleading stage. "Even post-*Twombly*, it has been noted that *a plaintiff is not required to establish the elements of a prima facie case* but instead need only to put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element.' " *Fowler*, 578 F.3d at 213.

trict Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. *Id.* Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Phillips*, 515 F.3d at 234-35. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.' " *Iqbal*, 129 S.Ct. at 1950. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense."

*Fowler v. UPMC Shadyside*, 578 F.3d at 210-211.

 The "plausibility" standard is similarly explained by legal scholars.[5] According to scholars, the Court must first identify all factual allegations contained in a complaint and weed out statements unsupported by facts, conclusive in nature or merely a recital of elements. Secondly, a court must conduct a context-specific analysis of the facts based on the court's judicial experience and common sense. Under this step, a court must determine whether a plaintiff has alleged enough facts to raise a reasonable expectation of relief and that any unknown variable will be answered definitively during discovery. There must be some evidence to justify moving a case beyond the pleading stage to the next stage of litigation. If there are too many unknown variables that can not be answered definitively during discovery, then plaintiff "has not nudged [his] claims across the line from conceivable to plausible. A court may then dismiss the complaint under Rule 8.[6]

---

[5] After the *Iqbal* decision, many in the legal community have attempted to summarize and explain the "plausibility" standard. According to one commentator, "a reviewing court should identify all legal allegations in a complaint, which are not entitled to a presumption of truth . . . if the complaint contains more than [mere] conclusions, then the court should examine all factual allegations, taken as true, and determine whether they plausibly given rise to an entitlement of relief." Rajiv Mohan, *A retreat from decision by Rule in Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009), 33 HARV. J.L. & PUB. POL'Y 1191, 1194 (2010).

[6] *See* Rhonda Wasserman & Frederick B. Goldsmith, *Third Circuit Court Practitioners Guide to Twombly and Iqbal*, 12 No. 13 LAWYERS J. 8, 9-10 (2010); and Victor E. Schwartz

■ In essence, the new pleading standard requires complaints to contain more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ibqal*, 556 U.S. at 678.

## IV. ANALYSIS

The issues to be resolved by this Court are: (1) whether the "merger" doctrine precludes Plaintiff's recovery for breach of contract under Count I; (2) whether the "statute of frauds" doctrine precludes Plaintiff's recovery for breach of contract claims under Count II; (3) whether the "statute of limitations" precludes Plaintiff's fraudulent and negligent claims under Counts VI and VII; (4) whether Plaintiff's fraudulent and negligent misrepresentation claims under Counts VI and VII are precluded from recovery for lack of particularity as required by law; (5) whether the "gist" doctrine precludes Plaintiff's fraudulent and negligent misrepresentation claims under Counts VI and VII; (6) whether Plaintiff's unjust enrichment claim in Count VIII satisfies FED. R. CIV. P. 8 pleading standards; (7) whether Plaintiff's claims for compensatory and punitive damages are viable claims of relief under Count IX and X; (8) whether Plaintiff's declaratory relief claim in Count XI satisfies 5 V.I.C. § 1261, et seq. as a plausible claim; and (9) whether Plaintiff's CICO claim in Count XII is sustainable when it fails to specify the alleged criminal activity or violated statute by the Defendants.

### A. The "merger" doctrine does not preclude Plaintiff's recovery under Count I.

Defendants David Band and Bay Isles argue that Plaintiff's breach of contract claim in Count I is barred by the doctrine of "merger" since it was based on the Purchase Agreement, which was extinguished when the deed to the property was transferred to Plaintiff, Furthermore, Paragraph 5 of the Purchase Agreement is bereft of any language suggesting that the parties intended the provision to survive closing and/or establishing seller's liability if there exist a substantial diminution of size or market value of the Unit. Defendants also contend that the parties were aware of the doctrine of merger at the time of the signing of the purchase

and Christopher E. Appel, *Rational Pleading in the Modern World of Civil Litigation: The Lessons and Public Policy Benefits of Twombly and Iqbal*, 33 HARV. J.L. & PUB. POL'Y 1107, 1128-1133 (Summer 2010).

agreement, since section 9A addresses which provisions of the agreement would survive closing. In opposition, Plaintiff maintains that Count I is based on Defendants impermissibly substituting building materials, which falls into the "collateral rights" exception to the "merger" doctrine.

■ Generally, in real estate transactions, once a buyer of real property accepts a deed of a conveyance, all warranties, representations and contractual rights created by the purchase and sales agreement are discharged and merged into the deed, unless the parties intended otherwise. *Andreychak v. Lent*, 257 N.J. Super. 69, 72, 607 A.2d 1346 (1992). An exception to this merger doctrine exists, however, for "collateral" promises such as rights having nothing to do with title, possession, quantity or emblements of the land conveyed. *Caparrelli v. Rolling Greens, Inc.*, 39 N.J. 585, 590-91, 190 A.2d 369 (1963).

■ A seller's covenant to construct, repair or improve the property is an independent, separate and collateral covenant and not deemed merged in the deed. *Weinberg v. Wilensky*, 26 N.J. Super. 301, 303, 305, 97 A.2d 707 (A.D. 1953) (seller agreed, in the purchase contract, to construct house in accordance with certain specifications was a collateral agreement not to be merged in the deed); *In re Perry*, 353 B.R. 18, 27 (Bankr. D. Mass. 2006) (seller's promises to deliver the property free of lead paint and asbestos were found collateral to the main promise to convey and support a claim for breach of contract); *Sweeney v. DeLuca*, 2006 Mass. Super. LEXIS 147, *12 (Mass. Super. 2006) (Seller's oral promises related to the integrity of the foundation of the home and the absence of water problems were found to be "additional or collateral" to the deed.).

■ Although nothing written in the Purchase Agreement reflects that the parties intended the rights and liabilities connected therein to continue beyond the transfer of the deed, the Defendants did agree to *construct and sell* a condominium unit on the property. The agreement therefore created a construction component which was a collateral issue to the conveyance of the deed. *See In re Perry*, 353 B.R. 18, 27-28 (Bankr. D. Mass. 2006).[7] Specifically, since Section 7 of the Purchase Agreement deals with what

---

[7] Plaintiff also argued that Section 5 survives since Plaintiff sent Bay Isles a letter before closing to reserve his inspection rights and delivery of a punch list *after* closing. Defendants argue that it never agreed to this change and thus these rights were merged with deed. However, since the Court has found independent grounds for Section 5's survival beyond closing, this issue will not be addressed.

43

construction materials and improvements were to be utilized in the Unit, as a result that section survives as a collateral issue as well.

Plaintiff has provided sufficient factual support for Count I under the plausibility test by alleging that Defendants breached the Purchase Agreement by constructing and delivering his Unit with substituted and inferior materials. According to Plaintiff, the Unit was constructed with inferior quality cabinets, hardware, doors, bathroom light fixtures, glass windows, doors, roofing materials, ceiling fans, and granite countertops. Outside glass doors were not hurricane resistant and the Unit was not pre-wired for telephone, cable or internet. *See* Complaint, pp. 8-9. Plaintiff also alleges that although Defendants agreed to provide security locks on the owner's closets, an overhang on the breakfast bar, washer and dryer in the lock-out units, and a garbage disposal, those items were missing from his Unit. *See* Complaint, p. 10.

Even though Sections 5 and 7 gave the Seller, Defendant Bay Isles, the discretionary right to substitute certain materials within Plaintiff's Unit those substitutions were to be of equal or greater value. Pertinent portion of Section 5 reads:

> **Seller may substitute materials** and make changes in the plans and specifications, including alterations to the elevations of the Building, as may be required by governmental authorities, as Architect and/or Seller may deem reasonably appropriate or as any be necessitated by material availability or construction requirements in the field. . . . Seller agrees that such **substitutions or changes shall not substantially decrease the size or market value of the Unit**. . . .

Additionally, portions of Section 7 reflect:

> The Unit shall be delivered unfurnished and undecorated, **except as may be specifically set forth in the Features and Specifications List provided with the sales brochure**. Seller reserves the absolute right, in its sole judgment and discretion, to substitute appliances, materials, fixtures, and equipment **of equal, or greater quality or value** for those specified. . . . Buyer acknowledges Buyer's understanding that certain items and improvements to the Condominium and/or Unit, such as color of any paint, **tile, cabinet, appliance or equipment to be furnished by the Seller** for the Unit are subject to design changes. . . . (Emphasis added.)

44

From Section 7, it can be inferred that the parties intended that the Seller's right to substitute materials be extended beyond items mentioned in the Purchase Agreement but also items mentioned on the "Features and Specification List provided with the sales brochure."[8] Defendant Bay Isles' Grand Bay Resort sales brochure offers the following: panoramic Bay views from primary living areas, harbor views from private terrace areas, high quality oiled bronze hardware throughout the Unit, pre-wired for cable television and telephones, high speed internet, garbage disposal, stacked washer and dryer, and secured interior owners closets.[9] *See* Plaintiff's Complaint, Exhibit 2.

 Given these facts, Plaintiff, with respect to Count I, has alleged enough facts regarding what materials were promised to him and what he received from the Defendant Bay Isles to meet his burden under the "plausibility" test and to raise a reasonable expectation of relief.[10] It also appears that any unknown variables such as the value of the materials offered to him, and those items delivered can be affirmatively answered during the discovery process. Thus, Defendants' request that Count I be dismissed is denied.

---

[8] Seller's absolute right to substitute items for equal or greater value is also mentioned after the "Features and Specification List," which was provided in the sales brochure. *See* Complaint, Exhibit 2.

[9] In Grand Bay Resort's sales brochure the following items were listed as residence features: open floor plans with panoramic views from the primary living areas, dramatic harbor views from private terraces, 8' solid mahogany entry door, Terra Cotta tile floors throughout including terrace areas, central air conditioning with digital thermostats, ceiling fans in living room and bedrooms, 7' high solid-core raised panel interior doors, *high-quality oiled bronze hardware throughout, pre-wired for cable tv and telephone, high-speed internet access, high quality European exterior glass doors and windows, granite countertops* in kitchen and baths, hardwood kitchen cabinets and vanities, Kitchen Aide architectural series stainless steel appliances (refrigerator w/ icemaker, range, oven, *garbage disposal*, and microwave), Kindred Stainless Steel under-mount sink in kitchen. Porcelain under-mount sinks in baths, Moen Plumbing fixtures in kitchen and baths, *stacked washer and dryer*, tiled baths and shower (full height in showers), secured interior owners closet, and convenient elevator access. Plaintiff's Complaint, Exhibit 2.

[10] According to the Complaint, Defendant Bay Isles was involved, directly and indirectly, with the sale, collection of monies, selection and delivery of furniture to the Plaintiff. *See* Complaint ¶ 17, and 26.

## B. While the "statute of frauds" doctrine does not preclude Plaintiff's breach of contract action under Count II, the "merger" doctrine and "parole evidence" rule bars such relief.

Defendants David Band and Bay Isles argue that any contract between the Plaintiff and Defendant Band relating to the acquisition of the Unit *prior to* the SPA is unenforceable under the statute of fraud doctrine. In opposition, Plaintiff argues that Count II is based on representations made by David Band, Frye, and Terry, in which they promised that certain finishes and amenities would be in the Unit, the existence of a Rental Management Program, and at a certain time the resort as a whole would be complete. *See* Plaintiff's Opp. Mot. to Dismiss, 5.

In review of the Complaint and SPA, the Court finds the Plaintiff's arguments unpersuasive. First, the SPA between the parties set forth explicit terms regarding the property to be sold and the parties' obligations. Additionally, there is no dispute regarding the terms of the agreement being vague or ambiguous. The only dispute is about performance of the agreement.

Secondly, there is no evidence to suggest that the SPA was not intended to be the parties' *final* and complete agreement under the parol evidence rule. Under the parol evidence rule, extrinsic evidence of a prior or contemporaneous agreement is excluded where the parties intended a written document to be the complete and final statement of their agreement. In other words, "a writing intended as the entire understanding of the parties is then subject to the parol evidence rule which precludes consideration of extrinsic evidence of a prior or contemporaneous agreement extending or altering the authority granted in writing." *Phillips v. Andrews*, 332 F. Supp. 2d 797, 803, 46 V.I. 233 (DVI App. Div. 2004). However, extrinsic evidence may be admitted to interpret a vague term in an agreement or it may be used to establish "illegality, fraud, duress, mistake, lack of consideration, or any other invalidating cause." RESTATEMENT (SECOND) OF CONTRACTS § 214 (1981).[11]

---

[11] RESTATEMENT (SECOND) OF CONTRACTS § 214 provides:

Agreements and negotiations prior to or contemporaneous with the adoption of a writing are admissible in evidence to establish
(a) that the writing is or is not an integrated agreement;

46

In this case, Plaintiff argues that he was fraudulently induced to enter into the SPA due to Defendants' representations *prior to* the signing of the SPA. However, it appears that section 12 of the SPA indicates the parties' intentions that the SPA be the complete and final statement of their agreement, which makes any prior promises by the Defendants void. The pertinent part of section 12 states:

> This agreement constitutes the entire agreement between the parties and no other agreements or representations shall be binding upon the parties unless included in a written agreement executed by both parties.

Additionally, there are insufficient facts under the *Twombly* plausibility standard that a prior agreement existed or was supposed to be incorporated into the parties' final integrated agreement. In fact, several disclaimers in the SPA suggest otherwise. Section 12 states in pertinent part:

> Buyer acknowledges and agrees that no representations or warranties have been made by Seller, its agents, or anyone acting for or on behalf of Seller other than as specified in this Agreement, and that none shall be implied or have been relied upon by Buyer in the execution of this Agreement.

> Buyer acknowledges and agrees that Seller did not induce Buyer to execute this Agreement by promising Buyer would receive any economic benefit as a result of the efforts of Seller or any other party from the rental of the Unit or by the providing of any future services or amenities otherwise. Seller does not guarantee or warrant Buyer will realize any economic benefit from the execution of this Agreement and the purchase of the Condominium Unit.

Furthermore, the merger doctrine precludes recognition or survival of any oral promises or representations made by the parties

---

(b) that the integrated agreement, if any, is completely or partially integrated;
(c) the meaning of the writing, whether or not integrated;
(d) illegality, fraud, duress, mistake, lack of consideration, or other invalidating cause;
(e) ground for granting or denying rescission, reformation, specific performance, or other remedy.

RESTATEMENT (SECOND) OF CONTRACTS § 214 (1981).

*before* the delivery of the deed, with exception to collateral matters. *Andreychak v. Lent*, 257 N.J. Super. 69, 72, 607 A.2d 1346 (1992). Under the merger doctrine, upon delivery and acceptance of a deed, the deed extinguishes a purchase agreement, along with all prior to or contemporaneous representations by the parties in connection with the sale with exception to collateral matters. *See In re Gill*, 1991 WL 212103 at *2 (Bankr. W.D. Pa. 1991) and *Elderkin v. Gaster*, 447 Pa. 118, 124, n. 11, 288 A.2d 771 (1972)).

Given the foregoing, Count II lacks sufficient facts to demonstrate that Plaintiff is entitled to relief from the Defendants under the *Twombly* plausibility standard.

### C. Plaintiff's fraudulent and negligent misrepresentation claims under Count VI and VII are not time barred by the Statute of Limitations.

Defendants argue that Plaintiff's fraudulent and negligent misrepresentation claims in Counts VI and VII should be dismissed since they are sounded in tort and fall under the two year statute of limitation for tort claims. In Counts VI and VII, Plaintiff claims that Defendants supplied him with false information regarding the construction materials of his Unit and the furniture package. Defendants point out that Plaintiff entered into the agreement on December 28, 2004, but did not file his complaint until April 16, 2009, which was more than four years later. In opposition, Plaintiff argues that the statute of limitations is tolled since Plaintiff did not discover the misrepresentations until December 5, 2008.

Under Virgin Islands law, the statute of limitations for all claims sounded in tort is two years. 5 V.I.C. § 31(5)(A). In fraud cases, however, the statute begins to run from the time a person knows of the fraud. 5 V.I.C. § 32(c). *Fountain Valley Corporation v. Wells*, 98 F.R.D. 679, 19 V.I. 607 (D.V.I. 1983).

Given the nature of the claims in this matter, there appears to be no indication that Plaintiff would have known of the misrepresentations by the Defendants until after the completion of the resort and his Unit. Furthermore, Plaintiff alleges that he became aware of the Defendants' alleged fraudulent misrepresentations regarding the resort and his Unit on December 5, 2008 during his post-closing inspection of the premises and filed a complaint afterwards in April 2009. Given these facts, Plaintiff's misrepresentation claims are timely pursuant to the statute of limitations

and are plausible. Thus, Defendants' motion to dismiss under Counts VI and VII, as timed barred, is denied.

### D. Plaintiff's fraudulent and negligent misrepresentation claims under Counts VI and VII lack the requisite particularity as required by law.

Defendants argue that Plaintiff's fraudulent and negligent misrepresentation claims in Counts VI and VII should be dismissed because they lack particularity under Rule 9(b) of the Federal Rules of Civil Procedure, and fall short of the *Twombly* "plausibility" standard. Given these heightened standards of review for complaints, Defendants' arguments are compelling.

With respect to the lack of "particularity" as required by FED. R. CIV. P. 9, Defendants argue that Plaintiff has not identified the place and the circumstances under which the misrepresentations occurred. In opposition, Plaintiff argues that the Complaint contains representations that were made by the Defendants Bay Isles and Band "up and through the closing on the Unit" regarding the existence of a Rental Management Program and the quality of construction materials to be used in the Unit. Additionally, counsel for Plaintiff cites to ¶ 20 of the Complaint, which refers to Plaintiff Jefferson, Defendant Band, and Defendant Carr signing the Rental Management Agreement. Paragraph 31 of the Complaint regarding the Plaintiff's discovery that the Rental Management Agreement was void is also cited to support Plaintiff's position that the particularity requirement was met.

Under the heightened pleading standard of Rule 9(b) of the Federal Rules of Civil Procedure, a plaintiff must "*state with particularity the circumstances* constituting fraud*"* in a complaint. FED. R. CIV. P. 9(b). In essence, this requires a plaintiff to plead "the time, place and contents of the false representation, as well as the identity of the person making the misrepresentations" in a complaint. *Tradewinds, Inc. v. Citibank, N.A.*, 20 V.I. 152, 160 (D.V.I. 1983). The purpose of the particularity rule is to place a defendant on notice of the precise misconduct with which he or she is being charged. *See Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007).

Under FED. R. CIV. P. 8(a)(2) and 12(b)(6), the purpose of the *Twombly* plausibility standard is to provide a defendant with "fair notice of what the . . . claim is and the grounds upon which it rests." *Twombly*,

550 U.S. at 555. Under the *Twombly* plausibility standard, a complaint must include enough information "to state a claim of relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "Where factual allegations do not permit the Court to infer more than the mere possibility of misconduct," the complaint has not shown that plaintiff is entitled to relief. *Iqbal*, 556 U.S. at 679. (quoting FED. R. CIV. P. 8(a)(2)).

 Similarly under Rule 9(b) the claim for fraud requires particularized pleadings but obviously more particularized facts are required under *Twombly*. If not, there would no longer be any distinction between regular claims and claims based on fraud or fraudulent misrepresentations.

 If a complaint is vague in some areas but generally puts a defendant on notice of the alleged fraudulent conduct, a court may consider whether an amended complaint would be curative or futile. *See Phillips*, 515 F.3d at 245. A court's early dismissal of a vague complaint without first allowing plaintiff the opportunity to a seek leave to amend may warrant remand of the case. *See Id.*; see also *Iqbal*, 556 U.S. at 687; *Gee v. Pacheco*, 627 F.3d 1178 (10th Cir. 2010).

If, however, a plaintiff chooses to stand on the basis complaint without making any changes or fails to cure the problems through an amended complaint, a court must dismiss the complaint. *See Holmes v. Gates*, 403 Fed. Appx. 670, 674 (3d Cir. 2010); *Golod v. Bank of America Corp.*, 403 Fed. Appx. 699, 702 (3d Cir. 2010); *Focus Consulting Group, Inc. v. Merchants Market, Inc.*, 2003 U.S. Dist. LEXIS 22916, *3 (D.V.I. 2003).

 In this case, Defendants challenge Counts VI and VII as being factually insufficient under the *particularity standard of Rule 9*, and the *Twombly* standard. However, the Court notes that even though the particularity and *Twombly* standards were in place at the initial filing of this matter, legal authority to provide guidance regarding the heightened pleading standards within the jurisdiction were not in effect. Specifically, *Iqbal* and *Fowler* cases were decided after the filing of the Complaint. Because leave of Court to amend shall be freely given when justice so requires together with the recent change in the law regarding dismissal of a complaint, the Court will permit Plaintiff to seek leave to amend his complaint with respect to Counts VI and VII if he desires to do so. The Court will however refrain at this time from providing a "roadmap" as to the possible deficiencies in the complaint since by doing so would create unfair advantage to the Plaintiff.

50

**E. It is too premature to determine if the "gist doctrine" precludes Plaintiff's fraudulent and negligent misrepresentation claims under Counts VI and VII.**

Under the "gist doctrine", Defendants argue that Plaintiff's misrepresentation claims in Count VI and VII should be dismissed by virtue of the "gist doctrine" since Count I is essentially the same claim as Counts VI and VII. Additionally, Defendants explain that the Purchase Agreement expressly prohibits in paragraph 12 any misrepresentation claims regarding any promises of future economic benefits. In opposition, Plaintiff argues that a dismissal based on the "gist" doctrine is premature. Plaintiff also argues that Counts VI and VII are based on Defendants' supplying false information regarding the existence and expected profits from the Rental Management Pool while Count I dealt with the Defendants substituting construction materials that decrease the value of the Unit.

A plaintiff is precluded from recasting a breach of contract claim as a tort claim applying the "gist doctrine." *See Werwinski v. Ford Motor Co.*, 286 F.3d 661, 680 (3d Cir. 2002). Claims precluded by the gist doctrine are claims that:

> (1) 'arise solely from a contract between the parties,' (2) where 'the duties allegedly breached were created and grounded in the contract itself,' (3) where 'the liability stems from a contract,' (4) or where the tort claim 'essentially duplicate a breach of contract claim or the success of which is wholly dependant on the terms of the contract.' *eToll, Inc. Elias/Savion Adver., Inc.*, 811 A2d 10, 19 (Pa. Super. Ct. 2002) (quoting *Galdieri v. Monsanto Co.*, 245 F. Supp. 2d 636, 650 (E.D.Pa. 2002); *Werner Kammann MaschinenFabrik, Gmblt v. Max Levy Autograph, Inc.*, [2002 U.S. Dist. LEXIS 1460, *20] (E.D.Pa. 2002); *Asbury Automotive Group, LLC v. Chrysler Inc. Co*, [2002 U.S. Dist. LEXIS 117, *10] (E.D.Pa. 2002); and *Polymer Dynamics, Inc. v. Bayer Corporation*, [2000 U.S. Dist. LEXIS 11493, *18] (E.D.Pa. 2000).

To maintain an independent tort claim, a party must allege facts showing that the tortious conduct is the "gist of the action" and that the contract is collateral. *Barefoot Architect, Inc. v. Bunge*, 48 V.I. 930, 933 (D.V.I. 2007). "[T]he important difference between contract and tort actions is that the latter lie from the breach of duties imposed as a matter

51

of social policy while the former lie for the breach of duties imposed by mutual consensus." *Id.* (quoting *Bohler-Uddeholm America Inc.*, 247 F.3d 79, 103 (3d Cir. 2001).

 Despite the usefulness of the doctrine, some courts have taken a cautious approach when granting a dismissal under the "gist" theory doctrine at the motion to dismiss stage of a proceeding. *See Pazzo, Inc. v. Innovative Custom Brands, Inc.*, 2010 U.S. Dist. LEXIS 114723 (M.D. Pa. 2010); *Orthovita Inc. v. Erbe*, 2008 U.S. Dist. LEXIS 11088, *27 (E.D.Pa. 2008); *see also Weber Display & Packaging v. Providence Wash. Ins. Co.*, 2003 U.S. Dist. LEXIS 2187, *12 (E.D. Pa. February 10, 2003). Often times, at this stage, "a court cannot determine whether the gist of the claim is in contract or tort without further evidence presented during discovery." *Id.*, 2003 U.S. Dist. LEXIS 2187, at *12; *see also Foster v. Northwestern Mutual Life*, 2002 U.S. Dist. LEXIS 15078, *6. (E.D. Pa. July 25, 2002).

Creating additional tension between the gist doctrine and the motion to dismiss stage is FED. R. CIV. P. 8, which allows a party to plead alternative theories of liabilities. *Weber Display & Packaging*, 2003 U.S. Dist. LEXIS 2187, at *12 (E.D. Pa. February 10, 2003). F.R.C.P. 8(e)(2) specifically states:

> A party may set forth two or more statements of a claim or defense alternatively or hypothetically, either in one count or defense or in separate counts or defenses. When two or more statements are made in the alternative and one of them if made independently would be sufficient, the pleading is not made insufficient by the insufficiency of one or more of the alternative statements. A party may also state as many separate claims or defenses as the party has regardless of consistency and whether based on legal, equitable, or maritime grounds.

 Given this pleading rule and discovery concerns, it would be premature for the Court to dismiss Counts VI and VII at this juncture before any discovery is conducted. As such, Plaintiff is entitled to maintain his fraudulent misrepresentation claim in Count VI and negligent misrepresentation claim in Count VII. However, the parties should be mindful of the "gist of the action" doctrine as discovery proceeds and the right for Defendants to possibly renew the motion after completion of discovery.

### F. Plaintiff's unjust enrichment claim in Count VIII satisfies FED. R. CIV. P. 8 alternative pleading standards.

Defendants argue that the unjust enrichment claim, Count VIII, must be dismissed since it duplicates Plaintiff's breach of contract claim in Count I and it is based on the Purchase Agreement, which was merged into the deed. Defendants additionally contend that Count VIII must be dismissed against Defendant Band since he was not a party to the SPA or furniture package agreement. In opposition, Plaintiff argues that Count VIII is an alternate form of relief to Count I, which is allowable under FED. R. CIV. P. 8.

██ Under Rule 8, a party seeking legal and equitable relief may make statements of a claim or defense alternatively. *See* FED. R. CIV. P. 8 (e)(2). Moreover, this "rule permits inconsistency in both factual and legal allegations . . . and has been interpreted to mean that a court 'may not construe [a plaintiff's] first claim as an admission against another alternative or inconsistent claim.'" *Independent Enterprises Inc. v. Pittsburgh Water and Sewer Authority*, 103 F.3d 1165, 1175 (3d Cir. 1997).

██ In this case, Count VIII is an unjust enrichment claim against all defendants, Bay Isles, Breckinridge, David Band, Kelly Frye, Bill Terry and Able Band. Count VIII alleges that the Defendants received and continue to possess monies from the Plaintiff unjustly for the Unit and the furniture package that was not agreed upon by the parties. Given Rule 8(e)(2), the Court concludes that Plaintiff is entitled in general to maintain his unjust enrichment claims since it is an alternate form of relief.

However, the unjust enrichment claim in Count VIII *against Defendant Band* is unsupportable. In review of the pleadings, there is no factual support to indicate that Defendant Band, in his individual capacity, made a separate oral contract with the Plaintiff. *Ergo*, Plaintiff has failed to raise a reasonable expectation of relief against Defendant Band, the individual, under Count VIII. Unjust enrichment claims against all other Defendants however may be maintained.

### G. Plaintiff's claims for compensatory and punitive damage relief are not viable claims for relief.

Defendants challenge claims of compensatory damages in Count IX and punitive damages in Count X since they are remedies and not viable

claims of relief. In the alternative, Defendants request that Count X be dismissed since it's a duplication of fraudulent misrepresentation in Count VI. In response, Plaintiff requests the Court to allow leave to amend the Complaint.

Under Rule 15(a) of the Federal Rules of Civil Procedure, a party may amend its pleading before trial. The rule also directs a Court to freely grant that relief when the opposing party has given consent or when such leave is required in the interest of justice. FED. R. CIV. P. 15(a); *see Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962).

In this case, Counts IX and Count X are not viable claims for relief but for remedies. Consequently, upon a prompt and properly filed motion to amend the complaint pursuant to Rule 15 and after the Defendants are given an opportunity to respond, the Court will make the necessary ruling. If no motion is filed within ten (10) days of the date of this Memorandum Opinion, the Defendants motion to dismiss Counts IX and X will be granted.

### H. Plaintiff's declaratory relief claim under 5 V.I.C. § 1261, et seq. satisfies a plausible claim.

Defendants argue that the declaratory relief claim, Count XI, must be dismissed since Plaintiff has pled insufficient facts to be plausible. Under the declaratory relief claim, Defendants assert that since the complaint is devoid of any allegation by the parties challenging the validity of the deed or Plaintiff's right to utilize the furniture, there is no basis for declaratory relief. Additionally, Defendants maintain that Count XI already seeks monetary damages for breaches of contracts in earlier Counts and now declaratory relief would be duplicative. In opposition, Plaintiff argues that the declaratory relief requested is supplemental relief, which is permissible under 5 V.I.C. §§ 1268 and 1269. Further, Plaintiff explains that his declaratory relief request is for the Court to order the Defendants to return all of his cost, fees, and expenses in exchange of conveyance back of the Unit and all other properties to the Defendants.

Under the Virgin Islands' Declaratory Judgment Act, a court has discretion to grant declaratory relief. *See Flavo-Rich v. Quinn*, 18 V.I. 530 (D.V.I. 1981). The scope however of this relief is limited to declaring rights, status, and other legal relations between the parties "whether or not further relief is or could be claimed." 5 V.I.C. § 1261. During the Court's determination of rights, status, and other legal relations between the

54

parties, objections to declaratory relief by an opposing party is not permissible. 5 V.I.C. § 1261 states:

> No action or proceeding shall be opened to objection on the grounds that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form and effect; and such declarations shall have the force and effect of a final judgment or decree.

Pursuant to §§ 1268 and 1269, a court may grant declaratory relief to a party as a supplement and a party may make such request even when another adequate remedy exists. *See* 5 V.I.C. § 1268 and 1269.

In this case, Count XI of the complaint, Plaintiff requests as a prayer of relief that the Defendants return all of his costs, fees, and expenses for his purchase of the Unit in exchange for his conveyance back of the Unit and all other properties to the Defendants. This inartful pleading in Count XI is similar to other Counts in the complaint. For example, Counts IX and X seeks compensatory and punitive damages as a claim of relief instead of a remedy. Accordingly, the Court will also give the Plaintiff an opportunity to amend Count XI to be either a claim of relief or part of the *ad damnum* clause.

### I. Plaintiff's CICO claim in Count XII while not specifically stating the criminal activity in Counts VI and VII is sustainable.

Defendants argue that the Criminally Influenced and Corruption Organization Act (CICO) claim in Count XII must be dismissed since Plaintiff failed to allege the specific criminal activity or a violated criminal statute by the Defendants. *See* 14 V.I.C. § 600, *et seq.* Additionally, Defendants argue that Plaintiff fails to state a viable claim and that mentioning the phrase "fraudulent conduct" alone in Count XII is insufficient to constitute criminal activity under CICO. In response, Plaintiff explains that Count XII concerns the Defendants' fraudulent and misrepresentation activities, which are explained throughout the complaint. Plaintiff further explains that if the fraud and misrepresentation activities in Counts VI and VII are not sufficiently pled, an amended complaint may be sought.

Pursuant to 14 V.I.C. § 605(a), "it is unlawful for any person employed by, or associated with, any enterprise, as that term is defined herein, to conduct or participate in, directly or indirectly, the affairs of the enterprise

through a pattern of criminal activity." Under this offense, a plaintiff must show a pattern of criminal activity by a defendant, which means "two or more occasions of conduct that . . . constitute criminal activity; are related to the affair of the enterprise; and are not isolated." 14 V.I.C. § 604(j).

 In this case, in Count XII, Plaintiff failed to allege the criminal activity or violated statute by the Defendants, which is required under CICO. However, in reviewing the complaint as a whole, the Plaintiff has stated throughout that the Defendants made false statements and fraudulent misrepresentations to him on numerous occasions up to, through and after closing on the Unit. Given these factual allegations and the fraudulent and negligent misrepresentation claims in Counts VI and VII, the criminal activity being alleged in Count XII is fraud and false statements under Title 14, Chapter 41, which is a permissible criminal activity under 14 V.I.C. § 604(e)(16). Furthermore, should these claims be required to specifically be reiterated and incorporated with Count XI, the Court will, upon application, grant leave to amend the complaint to do so.

## V. CONCLUSION

Because: (1) the "merger" doctrine does not preclude Plaintiff's recovery under Count I since Sections 5 and 7 of the Purchase Agreement are collateral issues; (2) the "merger" doctrine and the "parole evidence" rule preclude recovery under Count II; (3) Plaintiff's fraudulent and negligent misrepresentation claims under Counts VI and VII are not time barred by the "statute of limitations" since discovery of the breach occurred after the completion of the Unit/Resort; (4) Plaintiff's misrepresentation claims under Counts VI and VII are vague under the Rule 9 particularity requirement and *Twombly* plausibility standards, however, Plaintiff may apply for leave to amend; (5) given the absence of sufficient discovery and FED. R. CIV. P. 8, application of the "gist" doctrine for Counts VI and VII is premature; and (6) Plaintiff's unjust enrichment claim under Count VIII is permissible as an alternative form of relief against all Defendants except David Band, the individual; (7) Plaintiff's compensatory and punitive damages under Counts IX and X are not viable claims since they are remedies, however, Plaintiff may apply for leave to amend; (8) Plaintiff's declaratory relief claim satisfies 5 V.I.C. § 1261, *et seq.* as a supplement form of relief however the remedy should be recited in the *ad damnum* clause of the complaint, thus Plaintiff may apply for leave to amend; and (9) Plaintiff's CICO claim in Count

XII is sufficient since the Complaint despite not specifically state the criminal activity in Counts VI and VII, however, Plaintiff may apply for leave to amend to cure any ambiguity.[12]

Accordingly, the Defendants' Motion to Dismiss is (1) **GRANTED** with respect to Count II breach of contract claim; (2) **GRANTED in part** with respect to Count VIII unjust enrichment claim for only David Band, the individual; (3) **DENIED without prejudice** as to Count IX compensatory damages claim, Count X punitive damages claim and Count XI declaratory judgment to give Plaintiff an opportunity to amend his Complaint, upon timely and proper motion, to reflect compensatory, punitive damages, and declaratory judgment in his *ad damnum* clause; (4) **DENIED without prejudice** as to Count VI fraudulent misrepresentation claim, and Count VII negligent misrepresentation claim to give Plaintiff an opportunity to amend his Complaint, upon proper motion, and subject to a renewed motion to dismiss after discovery if alleged problems still exist; and (5) **DENIED** as to Count I breach of contract claim, Count XI declaratory relief claim and Count XII CICO.

---

[12] The Court notes that Defendant Bay Isles' Motion to Dismiss does not address breach of contract claims in Counts III, IV, and V. Therefore, these Counts will not be addressed in this opinion.