# IN RE ATTORNEY GENERAL SUBPOENA RE: TERMINIX INTERNATIONAL USVI, LLC

Case No. SX-16-MC-059

Superior Court of the Virgin Islands

Division of St. Croix

July 16, 2016

WILLOCKS, *Administrative Judge*

## MEMORANDUM OPINION

(July 16, 2016)

**THIS MATTER** comes before the Court on the U.S. Virgin Islands Department of Justice's (hereinafter, "Department of Justice") petition for enforcement of Attorney General subpoena duces tecum, filed on June 28, 2016 (hereinafter, "Petition").

## BACKGROUND[1]

Terminix International USVI, LLC (hereinafter, "Terminix") is a pest control company organized under the laws of the U.S. Virgin Islands with its principal place of business located in St. Croix, U.S. Virgin Islands. (Pet. ¶ 5; Objections, p. 1.) Terminix began operating in the U.S. Virgin Islands on April 1, 2012. (Objections, p. 1.) On April 28, 2016, the U.S. Virgin Islands Attorney General's Office (hereinafter, "Attorney General") issued a subpoena duces tecum to Terminix (hereinafter, "Subpoena"). (Pet., ¶ 7; Subpoena, p. 2.) The Subpoena, issued pursuant to Section 612(a), included a list of instructions, special instructions,

---

[1] The factual and procedural background are gathered from the Petition and the exhibits attached thereto: Exhibit A – Attorney General's Subpoena Duces Tecum, dated April 28, 2016; and Exhibit B – Terminix's Objections to Attorney General's Subpoena Duces Tecum, dated May 19, 2016.

definitions and documents and information to be provided.[2] The Subpoena stated that Terminix is "suspected to have engaged in, or be engaging in, conduct constituting a civil violation of the Criminally Influenced and Corrupt Organizations Act, 14 V.I.C. § 605, in connection with [Terminix's] conduct to mislead and deceive consumers, regulators, and/or employees concerning the illegal application of methyl bromide, a restricted-used pesticide, in residential and other unauthorized units in the United States Virgin Islands." (Subpoena, p. 1.)

---

[2] The Subpoena requested the following documents and information for the period from January 1, 2000 to the date of service: (1) documents sufficient to reflect the monthly inventories and revenues concerning methyl bromide in the U.S. Virgin Islands; (2) all contracts, work orders, service agreements, correspondence with customers, receipts, and other documents reflecting all applications of methyl bromide in the U.S. Virgin Islands; (3) all policies and procedures concerning the application of methyl bromide in the U.S. Virgin Islands, including, but not limited to, all disclosures provided to customers regarding methyl bromide, and instructions provided to customers regarding potential exposure or access to methyl bromide; (4) all marketing materials provided or made available to customers in the U.S. Virgin Islands regarding Terminix's pest control services, including fumigation treatments for powerpost beetles or other wood-boring insects, and/or "tape and seal" jobs; (5) all documents reflecting reports of injury, accidents, or other complaints of breaches of policies or procedures relating to the storage, release, disposal, or use of methyl bromide; (6) all documents, communications, or other reports submitted to Terminix International Company Limited Partnership, or to any government entity, regarding the storage, release, disposal, or use of methyl bromide in the U.S. Virgin Islands; (7) all documents concerning Terminix's corporate status, including but not limited to its members, its articles of organization, by-laws, registration(s), and annual reports; (8) all documents concerning approvals, registrations, restrictions, certifications, authorizations, licenses, labels, and permits associated with Terminix's purchases, sales, transport, disposal, or uses of pesticides registered with the United States Environmental Protection Agency; (9) all documents reflecting the financial and operational relationship between Terminix and Terminix International Company Limited Partnership, including, but not limited to, reporting, fee-and-revenue-sharing, use of trademarks and marketing materials, training, certification, and safety requirements; (10) all documents concerning any investigation of Terminix or Terminix International Company Limited Partnership's use of methyl bromide in the U.S. Virgin Islands or any injuries from its use, including, but not limited to, any reports, assessments, proffers, settlement agreements, plea agreements, or witness statements; (11) documents sufficient to identify Terminix employees in the U.S. Virgin Islands and their positions, dates of employment, training, certifications, and any disciplinary actions Terminix have taken concerning them; (12) any documents provided to the United States Department of Justice or the United States Environmental Protection Agency in the connection with the storage, disposal, or use of methyl bromide in the U.S. Virgin Islands that were not otherwise covered by these requests; and (13) all documents concerning testing or remediation required or performed to address the application, release, storage, disposal or transport of methyl bromide in the U.S. Virgin Islands. (Pet., p. 10-11.)

After being served with the Subpoena, Terminix responded with its objections to the Subpoena (hereinafter, "Objections"). (Pet., ¶ 13; Objections, p. 1.) In its Objections, Terminix included a preliminary statement, general objections, objections to instructions, objections to special instructions, objections to definitions, and objections to documents and information to be provided.[3] (Objections, p. 1-20.) Terminix "expressly disclaim[ed] and deni[ed] . . . any such jurisdiction [under the Criminally Influenced and Corrupt Organizations Act]." (*Id.*, at p. 1.) Terminix argued in its preliminary statement that "[Terminix] is a legitimate business enterprise, and there is no plausible claim that it has undertaken the type of 'sophisticated criminal activity' described in [the Criminally Influenced and Corrupt Organizations Act], such as participating in a black market economy, operating as a front company for organized crime, bribing public officials, or rigging elections in the U.S. Virgin Islands."[4] (Objections, p. 2.) Terminix also cited to Title 14 V.I.C.

---

[3] As to the documents and information requested in the Subpoena, Terminix raised a plethora of specific objections, including but not limited to: vague and ambiguous; unduly burdensome, unreasonable, harassing, and not related to any legitimate law enforcement purpose to the extent that it seeks documents unrelated to any potential claim that could be asserted against Terminix; unduly burdensome, unreasonable, harassing, and not related to any legitimate law enforcement purpose to the extent that it seeks documents regarding pest control services unrelated to methyl bromide; unduly burdensome, unreasonable, harassing, and not related to any legitimate law enforcement purpose in that it does not appear to be limited to matters within the jurisdiction of the U.S. Virgin Islands Attorney General; seeks records beyond the time period that Terminix commenced operation in the U.S. Virgin Islands; seeks the disclosure of confidential or proprietary information, trade secrets and/or confidential business or commercial information; seeks records beyond any potentially applicable statute of limitation; seeks documents beyond the scope of the Subpoena; seeks disclosure of information covered by the attorney-client privilege, the work production doctrine, the joint-defense/common interest privilege, confidentiality agreement with third parties, or any other applicable privilege or exception from the disclosure under federal or state law; seeks reports received by Terminix International Company Limited Partnership or government entities that were not submitted by Terminix; seeks documents in the possession of or seeks reports received by Terminix International Company Limited Partnership, which is a distinct legal entity; seeks documents located or maintained in areas outside the jurisdiction of the U.S. Virgin Islands; seeks documents that the U.S. Virgin Islands Attorney General could obtain from third parties or that are generally available to the public, or already in the possession, custody or control of the U.S. Virgin Islands; seeks the disclosure of confidential employee personal files that include sensitive personal information, and thus, constitutes an unwarranted invasion of those employees' personal privacy. (*Id.*, at p. 12-20.)

[4] Despite listing only "participating in a black market economy, operating as a front company for organized crime, bribing public officials, or rigging elections in the U.S. Virgin Islands"

§ 603(c) and stated that the Attorney General cannot make a credible claim that "[Terminix] was subject to, or participated in, 'the illegal manipulation of legitimate business and other enterprises by the use of fraudulent schemes and practices,' as [the Criminally Influenced and Corrupt Organizations Act] was created to target." (*Id.*, at p. 3.) Moreover, Terminix acknowledged that "[Terminix] has been investigated for, and charged in a criminal information with, misdemeanor violation of the Federal Insecticide, Fungicide, and Rodenticide Act[5] related to the application of methyl bromide via fumigation" but argued that "[t]hese misdemeanors do not qualify as 'criminal activity' under [the Criminally Influenced and Corrupt Organizations Act]." (*Id.*) Terminix claimed that it ceased the usage of methyl bromide and fumigation services in the U.S. Virgin Islands since March 2015, and that it has "not engaged in any other predicate violation that may trigger [Criminally Influenced and Corrupt Organizations Act] jurisdiction." (*Id.*) In light of its objections, Terminix did not provide any documents to the Attorney General.

In Response, the Department of Justice filed this instant Petition pursuant to Title 14 V.I.C. § 612(k). (Pet. ¶ 15.)

## DISCUSSION

In its Petition, the Department of Justice pointed out that "the Office of the Attorney General is charged with the responsibility of investigating violations of the [Criminally Influenced and Corrupt Organizations Act]" and that the Petition was made pursuant to Section 612(k), which "provides for enforcement of a subpoena by the Attorney General to produce documentary material which is relevant or material to an ongoing investigation." (Pet., p. 1.) Moreover, the Department of Justice explained that the Subpoena was "issued to obtain documents regarding Terminix's systematic and continual use and illegal application of methyl bromide, a restricted use pesticide" in the U.S. Virgin Islands. (*Id.*, at p. 2.)

---

as examples of "sophisticated criminal activity" described in CICO, Terminix is aware that the list for the types of criminal activities that fall within the scope of CICO is much more extensive. Terminix acknowledged that Title 14 V.I.C. § 604(e) specifically defines "criminal activity" and enumerates the types of crimes that fall within the scope of CICO. *See* Objections, p. 1-2.

[5] The Federal Insecticide, Fungicide, and Rodenticide Act provides for federal regulation of pesticide distribution, sale, and use. *See* 7 U.S.C. § 136 *et seq.*

Accordingly, the Department of Justice requested the Court to issue an order compelling Terminix to comply with the Subpoena. (*Id.*, at p. 2-3.)

In its Objections, Terminix essentially argued that it was not involved in any conduct constituting a violation of any of the provisions of Section 605. Thus, Terminix disputes the Attorney General's authority to issue the Subpoena under the Criminally Influenced and Corrupt Organizations Act in this instance and refused to comply with the Subpoena.

## I. The Criminally Influenced and Corrupt Organizations Act

The purpose of the Criminally Influenced and Corrupt Organizations Act, 14 V.I.C. § 600 *et seq.* (hereinafter, "CICO")[6] is "to curtail criminal activity and lessen its economic and political power in the Territory of the Virgin Islands by establishing new penal prohibitions and providing to law enforcement and the victims of criminal activity new civil sanctions and remedies." Title 14 V.I.C. § 601. CICO defines "criminal activity" as "engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in the crimes, offenses, violations or the prohibited conduct as variously described in the laws governing this jurisdiction including any Federal criminal law, the violation of which is a felony and, in addition, those crimes, offenses, violations or prohibited conduct as found in the Virgin Islands Code" as enumerated under Section 604(e).[7] Under CICO, the Attorney General may institute a civil and/or criminal proceeding for conduct constituting a

---

[6] Except as otherwise expressly indicated, all sections herein shall be construed to refer to Title 14 of the Virgin Islands Code.

[7] The list of crimes specifically enumerated under Section 604(e) includes:

(1) Title 3, chapter 25, Virgin Islands Code, relating to false testimony;
(2) Title 5, chapter 343, Virgin Islands Code, relating to electronic surveillance;
(3) Title 9, chapter 9, Virgin Islands Code, relating to foreign banks;
(4) Title 9, chapter 11, Virgin Islands Code, relating to banking transfers and conduct;
(5) Title 9, chapter 15, Virgin Islands Code, relating to loans;
(6) Title 9, chapter 17, Virgin Islands Code, relating to disclosure of finance charges;
(7) Title 11, chapter 29, Virgin Islands Code, relating to monopolies and restraint of trade;
(8) Title 14, chapter 11, Virgin Islands Code, relating to arson and other burning of property;
(9) Title 14, chapter 19, Virgin Islands Code, relating to bribery and graft;
(10) Title 14, chapter 21, Virgin Islands Code, relating to burglary;
(11) Title 14, chapter 23, Virgin Islands Code, relating to children;

violation of any provision of Section 605.[8] Furthermore, CICO provides

---

(12) Title 14, chapter 30, Virgin Islands Code, relating to criminally influenced and corrupt organizations;

(13) Title 14, chapter 33, Virgin Islands Code, relating to escape and rescue;

(14) Title 14, chapter 35, Virgin Islands Code, relating to extortion, oppression, and threats;

(15) Title 14, chapter 39, Virgin Islands Code. relating to forgery and counterfeiting;

(16) Title 14, chapter 41, Virgin Islands Code, relating to fraud and false statements;

(17) Title 14, chapter 45, Virgin Islands Code, relating to homicide;

(18) Title 14, chapter 53, Virgin Islands Code, relating to kidnapping;

(19) Title 14, chapter 55, Virgin Islands Code, relating to larceny and embezzlement;

(20) Title 14, chapter 57, Virgin Islands Code, relating to letters and messages;

(21) Title 14, chapter 61, Virgin Islands Code, relating to lotteries, gambling, and betting;

(22) Title 14, chapter 63, Virgin Islands Code, relating to malicious mischief;

(23) Title 14, chapter 67, Virgin Islands Code, relating to mayhem;

(24) Title 14, chapter 69, Virgin Islands Code, relating to vehicle auto theft;

(25) Title 14, chapter 75, Virgin Islands Code, relating to obstruction of justice;

(26) Title 14, chapter 77, Virgin Islands Code, relating to perjury;

(27) Title 14, chapter 81, Virgin Islands Code, relating to prostitution and related offenses;

(28) Title 14, chapter 83, Virgin Islands Code, relating to public officers and employees;

(29) Title 14, chapter 89, Virgin Islands Code, relating to records, documents, and reports;

(30) Title 14, chapter 93, Virgin Islands Code, relating to robbery;

(31) Title 14, chapter 95, Virgin Islands Code, relating to sabotage;

(32) Title 14, chapter 105, Virgin Islands Code, relating to stolen property;

(33) Title 14, chapter 113, Virgin Islands Code, relating to carrying or using dangerous weapons;

(34) Title 14, chapter 117, Virgin Islands Code, relating to credit cards;

(35) Title 18, chapter 27, Virgin Islands Code, relating to election offenses;

(36) Title 19, chapter 29, Virgin Islands Code, relating to controlled substances;

(37) Title 33, chapter 45, Virgin Islands Code, relating to offenses and forfeitures under Taxation and Finance;

(38) Any conspiracy to commit any violation of the laws of this Territory relating to the crimes specifically enumerated above.

[8] Title 14 V.I.C. § 605 provides:

§ 605. Violations

(a) It is unlawful for any person employed by, or associated with, any enterprise, as that term is defined herein, to conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of criminal activity.

(b) It is unlawful for any person, through a pattern of criminal activity, to acquire or maintain, directly or indirectly, any interest in, or control of, any enterprise or real property.

that "[w]henever any person is reasonably suspected to have engaged in, or to be engaging in, or about to engage in any conduct constituting a violation of any of the provisions of section 605 [Violations] of this chapter the Attorney General may, in his discretion, conduct an investigation of the conduct." Title 14 V.I.C. § 612(a).

## II. Section 612. Investigation by Attorney General

■ Section 612 enables the Attorney General to conduct investigations to determine whether a CICO violation has occurred and if civil and/or criminal proceedings should be commenced. *See* Title 14 V.I.C. § 612. The Attorney General is authorized under Section 612(a) to "subpoena witnesses, compel their attendance, examine them under oath, or to require the production of any books, documents, records, writings, recordings or tangible things (hereinafter referred to as "documentary material") relevant or material to the investigation, for inspection, reproducing, and/or copying." Title 14 V.I.C. § 612(a). Any subpoena issued by the Attorney General under Section 612(a) is required to contain, *inter alia*, "the nature of the conduct constituting the suspected violation that is under investigation and the provision of law applicable to it." Title 14 V.I.C. § 612(c). In other words, when the Attorney General issues a subpoena for the production of documents under Section 612, the subpoenaed party should be adequately informed of the pending investigation and the nature of the conduct under investigation for suspected violation of CICO. To deprive the party being investigated of such information would be unfair.

---

(c) It is unlawful for any person who has received any proceeds derived, directly or indirectly, from a pattern of criminal activity in which he participated as a principal, to use or invest, directly or indirectly, any part of the proceeds thereof, or any proceeds derived from the investment or use of any of those proceeds, in the acquisition of any title to, or any right, interest, or equity in, real property, or in the establishment or operation of any enterprise.

A purchase of securities on the open market with intent to make an investment, and without the intent of controlling or participating in the control of the issuer, or of assisting another to do so, shall not be unlawful under this section, if the securities of the issuer held by the purchaser, the members of his immediate family, and his or their accomplices in any pattern of criminal activity do not amount in the aggregate to one percent (1%) of the outstanding securities of any one class and do not confer, either in law or in fact, the power to elect one or more directors of the issuer of said securities.

(d) It is unlawful for any person to conspire or attempt to violate, either directly or through another or others, the provisions of section 605, subsections (a), (b), and (c).

As noted above, the Subpoena indicated that Terminix is being investigated for an alleged civil violation of Section 605. The Subpoena stated that the nature of the conduct under investigation is "[Terminix's] conduct to mislead and deceive consumers, regulators, and/or employees concerning the illegal application of methyl bromide, a restricted-used pesticide, in residential and other unauthorized units in the United States Virgin Islands." However, the Subpoena was silent with regard to "the provision of law applicable to it" as required under Section 612(c). Nevertheless, this error does not automatically render the Subpoena fatally flawed. *See, e.g., Jefferson v. Bay Isles Assocs., L.L.L.P.*, 59 V.I. 31 (Super. Ct. 2011) (Despite the fact that the plaintiff failed to allege the criminal activity or violated statute as required under CICO, the court found the criminal activity being alleged in the CICO claim is fraud and false statements because the plaintiff stated throughout the complaint that the defendants made false statements and fraudulent misrepresentations to him on numerous occasions.).

██ At first glance, given that the Subpoena stated that the conduct under investigation is "[Terminix's] conduct to mislead and deceive," it is conceivable that the criminal activity being alleged is fraud and false statements under Chapter 41 of Title 14 of the Virgin Islands Code, which is a permissible criminal activity under Section 604(e). However, upon reviewing the Petition, it appears that the Subpoena "was issued to obtain documents regarding Terminix's systematic and continual use and illegal application of methyl bromide . . . throughout the United States Virgin Islands." If this is the conduct under investigation — Terminix's illegal application of methyl bromide — then the Court must first determine whether this is a permissible criminal activity under Section 604(e). If this conduct is not a permissible criminal activity under 604(e), then the Attorney General is not authorized to issue the Subpoena pursuant to CICO.

██ The illegal application of methyl bromide is not one of the crimes specifically enumerated as a permissible criminal activity under Section 604(e). Neither the Subpoena nor the Petition included the alleged local statute and/or federal statute violation(s). Terminix acknowledged in its Objections that it has been under investigation for federal violations "related to the application of methyl bromide via fumigation" and was ultimately charged with misdemeanor violations of the Federal Insecticide, Fungicide, and Rodenticide Act. However, Terminix is correct that a misdemeanor federal violation is not a permissible criminal activity

68

under Section 604(e).[9] Thus, the question remains as to whether Terminix's illegal application of methyl bromide is a permissible criminal activity under Section 604(e). Unfortunately, the Court cannot make this determination without more information. Thus, the question also remains as to whether the Attorney General is authorized to issue the Subpoena pursuant to CICO. It is important to point out that Section 612(a) only authorizes the Attorney General to investigate "conduct constituting a violation of any of the provisions of section 605 [Violations] of [CICO]." Section 612 does not give the Attorney General unlimited authority to investigate.

■ ■ Here, the Court finds that the Subpoena failed to adequately inform Terminix of the nature of the conduct under investigation for suspected violation of CICO — namely, is the Attorney General investigating Termnix for misleading and deceiving statements regarding methyl bromide or for illegal application of methyl bromide. A subpoena should not be drafted in a manner which requires the Court and the party being investigated to guess as to the nature of the conduct under investigation. Based on this uncertainty, the Court is unable to determine whether the Attorney General is authorized to issue the Subpoena pursuant to CICO in this instance. Accordingly, the Court will deny this Petition.

## CONCLUSION

Based on the foregoing, the Court will deny the Petition. An Order consistent with this Memorandum Opinion will follow.

---

[9] Title 14 V.I.C. § 604 provides:

§ 604. Definitions.

As used in this chapter:

(e) "Criminal activity" means engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in the crimes, offenses, violations or the prohibited conduct as variously described in the laws governing this jurisdiction including any Federal criminal law, the violation of which is a felony and, in addition, those crimes, offenses, violations or prohibited conduct as found in the Virgin Islands Code as follows: . . .

The requirement that "the violation of which is a felony" follows the phrase "any Federal criminal law." Thus, it stands to reason that the Legislature intended for the felony requirement to apply to Federal criminal law. In construing a statute, "[i]f the intent of [the Legislature] is clear, that is the end of the matter." *In re Infant Sherman*, 49 V.I. 452, 456 (V.I. 2008) (citations and internal quotations omitted).