**FILED**
November 19, 2020
ST-2015-CR-00331
TAMARA CHARLES
CLERK OF THE COURT

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. THOMAS AND ST. JOHN**
**\*\*\*\*\*\*\*\*\*\*\*\*\***

| | |
|---|---|
| **PEOPLE OF THE VIRGIN ISLANDS,** | ) CASE NO. ST-2015-CR-00331 |
| | ) |
| Plaintiff, | ) 14 V.I.C. § 1700a(a) & 16 V.I.C. § § 91(b)(6) |
| vs. | ) 14 V.I.C. § 1700a(a) & 16 V.I.C. § § 91(b)(6) |
| | ) 14 V.I.C. § 1701(3) & 16 V.I.C. § § 91(b)(6) |
| **LEROY E. HODGE,** | ) |
| | ) |
| Defendant. | ) |

Cite as: 2020 VI Super 95U

## MEMORANDUM OPINION AND ORDER

### I.       INTRODUCTION

**¶1       THIS MATTER** is before the Court on the People's Motion *In Limine* to Admit Testimony of Defendant's Prior Crime ("Motion"), which was filed on March 5, 2019. No response to this Motion was filed by the Defendant. The People of the Virgin Islands request this Court to enter an order allowing the People to admit evidence of Defendant Leroy Hodge's prior criminal conviction. In 1995, the Defendant was convicted of several offenses, including Second Degree Murder in violation of V.I. CODE ANN. tit. 14 § 922, in *Gov't of the V.I. v. Hodge*, filed in the Superior Court of the Virgin Islands, District of St. Thomas and St. John and docketed as Case No. ST-1994-CR-00047. The People contend that it is necessary to admit this evidence to satisfy the threatening and fear elements of the crimes charged and to support the victim's credibility as a witness.

**¶2       A** review of the transcript of an earlier trial in this matter and statements to the police do not support the assertion by the People that the victim was indeed aware of the Defendant's past criminal history or that this history was the basis of the victim's fear. Further, it does not appear that the credibility of the victim's fear was ever in question. The Virgin Islands Rules of Evidence require that prior crimes may be admitted only for issues actually in contention. The Court recognizes that the People may readily prove the victim's knowledge of this fact through proper testimony, and that the victim's credibility on this issue may arise during trial. Thus, the Court reserves judgement on this issue until trial.

### II.      FACTUAL AND PROCEDURAL BACKGROUND

**¶3       Defendant** was arrested August 30, 2015, after the teenage daughter of his girlfriend, whom he lived with, accused him of raping her on or about August 30, 2015. On the morning of the assault, the victim had in her possession an incriminating note supposedly written by the Defendant. After a lengthy pre-trial and discovery period, the Defendant a jury trial was conducted

beginning on April 4, 2017 on three counts: (1) Aggravated Rape in the Second Degree – Sodomy – Domestic Violence in violation of 14 V.I.C. § 1700(a), 16 V.I.C. § 91(b)(6); (2) Aggravated Rape in the Second Degree – Domestic Violence in violation of 14 V.I.C. 1700a(a), 16 V.I.C. § 91(b)(6); and (3) Rape in the First Degree – Domestic Violence in violation of 14 V.I.C. § 1701(3), 16 V.I.C. § 91(b)(6).

¶4     During the trial, the People presented multiple witnesses, including the victim, her mother, police officers, forensic experts, and doctors. The People elicited testimony from several witnesses as to the Defendant's violent or aggressive nature. To wit, the victim testified that she was "afraid of Mr. Hodge,"[1] that he was "aggressive,"[2] that she heard her mother being hurt by him,[3] that he threatened to "shoot up the place,"[4] and that he hurt her brother and beat her "with [her] majorette stick, with a broom stick."[5] She also testified that he would "tell [her] stuff so [she] would comply,"[6] that he "threatened [her boyfriend],"[7] and that she "don't really remember what he said he would do, but [she knew] he said he would harm [her boyfriend] in some fashion."[8]

¶5     The mother testified that the relationship became "violent"[9] and that she was "scared."[10] The People introduced into evidence the note allegedly written by the Defendant, which was read by the victim, including the line "I going go for everybody today and I ain leaving no one alive."[11] The People highlighted these points in their closing arguments - that the mother and victim were "afraid," they knew who they "were dealing with . . . knew the violent nature of the defendant."[12] The mother also testified that she tried to seclude herself in the bathroom, pretended to be talking to a taxi when she called the 911 operator, and conducted much of the call in text form in an effort to mask the call from the Defendant.[13]

¶6     The Defendant has a criminal record, including a Second Degree Murder conviction in violation of 14 V.I.C. § 922 in *Gov't of the V.I. v. Hodge*, Case No. ST-1994-CR-00047, for which he was sentenced to 20 years in prison. During the first trial in this matter, the People did not seek to introduce Defendant's prior criminal record. The Defendant put on one witness, a DNA forensic expert. The trial lasted six days and concluded April 10, 2017 without a unanimous decision by the jury, and a mistrial was declared on April 18, 2017.

---

[1] Trial Tr. vol. 3, 150.
[2] *Id.*
[3] *Id.* at 152.
[4] *Id.* at 153.
[5] *Id.* at 153
[6] *Id.* at 162.
[7] *Id.*
[8] *Id.*
[9] Trial Tr. vol. 1, 111.
[10] *Id.* at 141.
[11] *Id.* at 167-68.
[12] Trial Tr. vol 4, 34.
[13] Trial Tr. vol. 1, 128, 139-42.

¶7    On March 5, 2019, the People filed with this Court a "Motion *In Limine* To Admit Testimony of Defendant's Prior Crime" (hereinafter "Motion"). In this Motion, the People state that the Defendant had informed the victim that he "had murdered someone before and served time in jail for murder,"[14] and that "the knowledge that the Defendant had previously murdered someone"[15] caused the victim to comply. That "the evidence of the Defendant's prior crime is a part of the minor victim's testimony regarding how she was raped"[16] and that "it is necessary to satisfy the threatening element of the crimes charged and to support the minor victim's credibility as a witness."[17]

## III.    ANALYSIS

¶8    The admission of prior criminal history is governed by the Virgin Islands Rules of Evidence 404(b) which states that "evidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character."[18] While the People in their Motion state that 404(b) is a rule of "inclusion rather than exclusion,"[19] the Court and the Third Circuit have subsequently made clear that there is no presumption of admissibility, and "inclusionary" language in prior cases merely indicates that admissibility of prior crimes is not limited by the list of acceptable issues in subsection 2 of 404(b).[20]

¶9    Subsection 2 of the rule states that "evidence of a crime . . . may be admissible for other purposes, such as addressing issues, *if actually contested in the case*, concerning motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident – provided that the probative value of such proof, supported by specific facts and circumstances, substantially outweighs its prejudicial effect."[21]

¶10    When evaluating whether prior bad acts may be admitted under 404(b), the Court looks at four factors: (1) the evidence must be offered for a proper purpose, (2) the evidence must be relevant under the standards of Rule 402, (3) its probative value must not be substantially outweighed by its potential for unfair prejudice pursuant to Rule 403, and (4) where requested the court must instruct the jury to consider the evidence only for its limited admissible purpose.[22]

---

[14] Mot. 2.

[15] *Id.*

[16] Mot. 3.

[17] *Id.*

[18] V.I.R. EVID. 404(b).

[19] Mot. 3 (citing *Gov't of V.I. v. Edwards*, 903 F.2d 267 (3d Cir. 1990)).

[20] *United States v. Caldwell*, 760 F.3d 267, 275-76 (3d Cir. 2014); *see also, United States v. Scarfo*, 850 F.2d 1015, 1019 (quoting *United States v. Simmons*, 679 F.2d 1042, 1050 (3d Cir. 1982)); *People v. Stephens*, VI Super 36U, ¶9 (citing *United States v. Caldwell*, 760 F.3d 267, 276 (3d Cir. 2014)) (noting that this is a rule of general exclusion with the permitted uses treated as exceptions).

[21] V.I.R. EVID. 404(b)(2) (emphasis added).

[22] *Tyson v. People*, 59 V.I. 391, 423 (V.I. 2013); *Huddleston v. United States*, 485 U.S. 681, 691-92 (1988).

### 1. Proper Purpose

¶11    The Court must first evaluate whether the prior bad act or crime is being offered for the proper purpose.[23] The People in their Motion state that the prior criminal history of the Defendant is to be used, among other reasons, to "demonstrate fear and state of mind of the victim" as well as "to complete a story."[24] This purpose is well supported by the Virgin Islands Supreme Court and other Virgin Islands courts.

¶12    In regards to explaining the circumstances or 'completing the story,' *Chinnery v. Virgin Islands*[25] allowed evidence that the defendant in that case had made prior sexual remarks and advances towards the victim in order to "complete the story of the crime as well as to explain the relationship of the parties or the circumstances surrounding a particular event."[26] The District Court of the Virgin Islands in *Ledesma v. Gov't of Virgin Islands*[27] allowed evidence to be admitted of the defendant's prior sexual contact with the victim in order to help "explain the evidence and testimony regarding the victim's reaction to the acts and failure to resist appellant's advances or to alert anyone."[28] In the Superior Court of the Virgin Islands' case *People v. Pickering*,[29] evidence of the defendant's prior sexual remarks about the victim was allowed to show that the defendant had a "particular interest" in the victim – in other words to explain the relationship between the parties.[30] The Third Circuit in *Gov't of Virgin Islands v. Harris*[31] allowed testimony of a defendant's prior attempts to stab and strangle his wife as evidence that her death was not accidental or suicidal and that she did not simply disappear voluntarily – a way of 'completing the story.'[32]

¶13    Regarding using prior criminal acts to show a fearful state of mind, the Virgin Islands Supreme Court allowed such evidence in *Christopher v. People of the Virgin Islands*,[33] where a defendant used the prior bad acts of an assailant as part of a self-defense claim to try and show he feared for his life.[34]

¶14    In the case at hand, the victim testified she was "afraid,"[35] that the Defendant had threatened to "shoot up the place,"[36] that the Defendant would "harm [her boyfriend] in some

---

[23] *Id.*
[24] Mot. 4.
[25] 55 V.I. 508 (V.I. 2011).
[26] *Id.* at 526-27 (citing *United States v. Rock*, 282 F.3d 548, 551 (8th Cir. 2002)).
[27] 159 F. Supp. 2d 863, 869 (D.V.I. 2001).
[28] *Id.* at 871.
[29] Super. Ct. Crim. No. ST-12-CR-421 (STT), __ V.I. __, 2013 WL 4522079, at *1 (V.I. Super. Ct. Aug. 9, 2013)
[30] *Id.* at *3; *see also, People v. Fenton*, 59 V.I. 163 (Super. Ct. 2013) (prior instances of domestic abuse were allowed to "complete the story" since they showed "the systematic isolation, abuse and control by the Defendant over a female partner").
[31] 938 F.2d 401, 420 (3d Cir. 1991).
[32] *Id.* at 420.
[33] 57 V.I. 500 (V.I. 2012).
[34] *Id.* at 510-11.
[35] Trial Tr. vol. 3, 150.
[36] *Id.* at 153.

fashion,"[37] and that he would "tell [her] stuff so [she] would comply."[38] The note allegedly from the Defendant stated that he "ain leaving no one alive."[39] Finally, the mother testified that upon learning of the rape she entered the bathroom, pretended to call a taxi, and texted with the 911 operator.[40] Admission of evidence that Defendant had previously murdered people would go to the victim's fearful state of mind, as well as would help 'complete the story' about the kind of "stuff" Defendant may have told the victim, explain why the mother acted the way she did upon learning of the rape, and lend credence to the threat in the note. If admitted for these reasons, such purposes would be proper.

¶15     Additionally, the People cite to *Colon v. Gov't of the Virgin Islands*[41] in support of the uses mentioned above.[42] It should be noted that in that case, the government was offering evidence of a prior act in order to prove intent and the absence of mistake, which is explicitly allowed in 404(b), and not to 'complete a story' or 'demonstrate fear.'[43]

## 2. Relevance

### a. Prior Acts May Be Relevant to Show Fear

¶16     Next the Court must consider whether the prior criminal act is relevant.[44] Relevance of evidence is assessed under V.I.R. EVID. 401: "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."[45]

¶17     The People in their Motion argue that the prior crime of murder is relevant to several facts of consequence: that the victim was intimidated; that the victim's resistance was prevented by fear of immediate and great bodily harm; and that the victim had reasonable cause to believe harm would be inflicted upon her.[46] These elements are required to prove Aggravated Rape in the Second Degree – Sodomy – Domestic Violence[47] and Rape in the First Degree – Domestic Violence.[48] While the People cite no case law in their Motion, persuasive authority and logical inference show that the prior murder charge is relevant to the elements of intimidation and fear in this situation.

---

[37] *Id.* at 162.
[38] *Id.*
[39] Trial Tr. vol. 1, 167-68
[40] *Id.* at 128, 139-42.
[41] 30 V.I. 119, 124 (D.V.I. App. 1994).
[42] Mot. 4.
[43] *Colon*, 30 V.I. at 124 ("On appeal, the Government concentrated on the value of Exhibit No. 5 in showing Colon's intent to create an unauthorized withdrawal slip to deprive Ms. Todman of money deposited in her savings account . . . Exhibit No. 5 is highly probative in determining appellant's intent by demonstrating a cumulative or continuing action and the "absence of mistake or accident" pursuant to Fed. R. Evid. 404(b)")
[44] *Tyson v. People*, 59 V.I. 391, 423 (V.I. 2013); *Huddleston v. United States*, 485 U.S. 681, 691-92 (1988).
[45] V.I.R. EVID. 401.
[46] Mot. 6-7.
[47] V.I. CODE ANN. tit. 14 § 1700a(a); V.I. CODE ANN. tit. 16 § 91(b)(6).
[48] V.I. CODE ANN. tit. 14 § 1701(3); 16 V.I.C. § 91(b)(6).

¶18    A variety of opinions from outside this jurisdiction have indicated that prior bad acts or crimes may be relevant in considering whether or not a victim was reasonably afraid. In the New Hampshire Supreme Court case of *State v. Richardson*,[49] the prior acts of a defendant threatening himself and the victim with a knife, among other things, was considered relevant to the charge of criminal threatening.[50] In the Massachusetts Appeals Court case of *Commonwealth v. Johnson*,[51] a defendant's prior acts of abuse against his partner was considered probative of her reasonable fear that he would harm her in a case involving the violation of a protective order.[52] Lastly, that a person not only says that they have killed, but has been found guilty in a court of law of murder, would instill in a reasonable person apprehension of the murderer – the statement is more than idle chatter or a baseless assertion, it is grounded in fact.

¶19    As stated above, the People in this case bear the burden of proving reasonable fear and/or threat and intimidation. The victim offered testimony of her fear of the Defendant at trial and the grounds upon which it was based – beatings and other domestic violence against her and her family. She also vaguely alluded to threats against her and her boyfriend. That the victim knew of her assailants violent past, or that he threatened her with that information, would be relevant to show fear because she could reasonably be afraid that, being capable of killing another human, he may do it again to her, her boyfriend, or her family – and that the societal punishment of incarceration is not adequate enough to prevent him.

### b.    V.I.R. Evid. 404(b)'s "If Actually Contested" Requirement

¶20    However, the cases outlined above involve prior bad acts or crimes perpetrated against the victim. The People seek to admit evidence of a crime perpetrated before the victim in this case was even born. The People assert in their Motion that the Defendant "[told] the victim that he had killed someone before."[53] Neither the trial transcript or any other statements made by the victim or the victim's mother indicate that they were aware of his prior conviction for murder. In fact, the victim testified that she "[didn't] really remember what he said he would do"[54] and her testimony as to why she was afraid of the Defendant rested on him being "aggressive" and beating her with sticks, fighting with her mother, and beating her brother – not because he was a convicted killer.[55] This

---

[49] 635 A.2d 1361 (N.H. 1995).

[50] *Id.* at 1363-64 ("Such evidence made it more probable than not that the defendant on the later occasion acted with an intent to terrorize her and that those actions placed her in fear for her physical safety.")

[51] 45 Mass. App. Ct. 473 (Mass. Ct. App. 1998).

[52] *Id.* at 478 ("Here, Thibeault's testimony was probative of the defendant's hostility toward her and his pattern of acting on that hostility. It was offered to show that as a result of the defendant's prior conduct, she reasonably feared that he would harm her."). However, some courts have refused to extend the 404(b) exceptions to include fear. *See, State v. Sanders*, 716 A.2d 11, 13 (Vt. 1998) ("Here, we need not decide whether the prior bad acts may be admissible solely to show fear or intent because the evidence was relevant also to portray the history surrounding the abusive relationship, providing the needed context for the behavior in issue.")

[53] Mot. 7.

[54] Trial Tr. vol. 3, 162.

[55] *Id.* at 150-53.

suggests the victim was not aware of the Defendant's past, and her reasonable fear was based on other prior bad acts.

¶21　404(b) of the Virgin Islands Rules of Evidence differs from 404(b) of the Federal Rules of Evidence in that it requires that the issue be "actually contested in the case."[56] The addition of the phrase to V.I.R. EVID. 404(b) — whereas the rest of the rule mirrors F.R. EVID. 404(b)[57] — suggests that the V.I. rule is more limited than the federal one. Even without this inference, pre-adoption authority suggests a skepticism towards admission for just any issue other than propensity.

¶22　In a pre-V.I.R. EVID. case, *Gov't of the Virgin Islands v. Archibald*,[58] the prosecution sought to admit evidence of the defendant's prior sexual contact with the victim's sister to show how a witness (the sister) knew the defendant.[59] The Third Circuit noted that "[t]he accuracy of the identifications by Williams and Latoya, however, was neither an actual nor even a probable material issue in the case";[60] that "[t]here was no question that he had known the victim and her mother for years as neighbors and friends";[61] and noted that the government was engaged "[i]n a vain attempt to fashion a material issue."[62] Further, there was no implication that the defendant would contradict testimony on the grounds of identity.[63]

¶23　In contrast, in *Gov't of the Virgin Islands v. Pinney*,[64] the prosecution at trial introduced evidence that the defendant had previously raped the victim's sister some six years prior.[65] The prosecution sought to introduce it as evidence that the defendant in that case had acted "knowingly" or, alternatively, as a part of a "common plan or scheme."[66] While tenuously accepting the first rational,[67] the Third Circuit rejected the second argument.[68] The Third Circuit, however, did note that the prior bad act could theoretically be admissible for rehabilitative

---

[56] V.I.R. EVID. 404(b)(2); *cf.* F.R. EVID. 404(b).

[57] *Id.*

[58] 987 F.2d 180 (3d Cir. 1993).

[59] *Id.* at 183 ("[T]he government asserts that the evidence was admissible under Rule 404(b) because it was introduced to support the in-court identification of Archibald by Williams and Latoya, not to show Archibald's propensity to engage in illicit sex with children.")

[60] *Id.* at 185.

[61] *Id.*

[62] *Id.*

[63] *Id.* at 185-86 ("Nothing in the notice suggested that Archibald would deny having known Latoya and her mother for several years. Furthermore, nothing implied that Archibald would contradict those portions of Latoya's testimony indicating that she was raped in a manner that would have made the identity of her perpetrator apparent.")

[64] 967 F.2d 912 (3d Cir. 1992).

[65] *Id.* at 915.

[66] *Id.*

[67] *Id.* at 916 ("If Pinney had intercourse with Tamisha, it is, to say the least, highly unlikely on the facts of this case that he did so by accident or mistake. Nevertheless, as a matter of logic, it is at least marginally more likely that he did so intentionally if he had previous experience with intercourse.")

[68] *Id.* at 916-17 ("There are similarities between the two alleged incidents: each involved a minor of about the same age; each allegedly occurred in the defendant's apartment; each involved sexual intercourse; and each time, the defendant allegedly warned the victim not to tell anyone. But these shared characteristics are not sufficiently unique to warrant the inference that Pinney was the perpetrator in each incident.")

purposes if defense counsel were to attack the witnesses' credibility on cross-examination – that is, to put the issue of credibility in contention.[69] In both cases, the Third Circuit suspected the true purpose behind some of the government's arguments was to improperly suggest that the defendant had a propensity to commit the crime.[70]

¶24    While these cases were decided before the adoption of the Virgin Islands Rules of Evidence, they suggest a suspicion that the prosecution may argue it is introducing prior bad acts for a reason that, though logically sound and facially relevant or probative, is not truly at issue in the case and may in fact be an attempt to sway the jury.[71] In the case at hand, Defendant has plead not guilty, which in a sense means he contests the whole case. This would include the elements of 14 V.I.C. 1700a(a) and 14 V.I.C. 1701(3), discussed above, which require that that the Defendant had threatened or intimidated the victim, and that the victim had a reasonable fear for her safety. It is certainly reasonable to fear someone who has murdered and threatens to murder again. Yet, such a reading of the rule, that a mere plea of not guilty is a contestation of every single element of a crime, is overly broad and perhaps unconstitutional. It imputes to the Defendant, who has a constitutional right to not testify,[72] a slew of assertions – namely that the Defendant denies doing anyone, or all, of the elements of a crime. Further, reading into 404(b) such an allowance would render the exclusionary rule functionally useless. It also is at odds with what appears to be the drafter's intent of making V.I.R. EVID. 404(b)(2) stricter than F.R. EVID. 404(b)(2).

¶25    Moreover, this is not the only reason the People seek to introduce this evidence. They also seek to introduce the Defendant's prior crime as "evidence of the threat" itself,[73] and to "support the credibility of the victim's testimony that [the Defendant] did in fact threaten her because the Defendant was in fact convicted of murder and served time in jail for it."[74] While the People asserted in closing argument that the mother and victim knew who they "were dealing with . . . knew the violent nature of the defendant"[75] –which suggests that perhaps they were in fact aware of the Defendant's conviction – this assertion came from the People, not any witness.

---

[69] *Id.* at 917 ("With respect to the government's contention that Jamila's testimony was admissible for rehabilitative purposes, we agree that the need to dispel an exculpatory implication implanted by the defense attorney during cross-examination of the prosecution's witnesses can fulfill the proper purpose requirement of Rule 404(b).")

[70] *Gov't of the V.I. v. Archibald*, 987 F.2d 180 (3d 1993) ("Williams' testimony revealing the prior sexual encounter between Tasha and Archibald was not probative of any material issue except Archibald's propensity to commit the charged crime."); *Pinney*, 967 F.2d at 916 ("In this case, however, there is no chain of logical inferences between a rape of Jamila by Pinney and Tamisha's credibility which does not involve an inference that if Pinney raped Jamila, he is likely to have raped Tamisha as well. While the government's contention is stated in terms of credibility, impeachment, and rehabilitation, it is in effect asking that Tamisha be believed when she says she was raped by Pinney because Pinney raped Jamila six years earlier. This type of inference is precisely the kind prohibited by Rule 404(b).")

[71] *See generally, United States v. Sampson*, 980 F.2d 883, 886 (3d 1992) ("Although the government will hardly admit it, the reasons proffered to admit prior bad act evidence may often be [P]otemkin village, because the motive, we suspect, is often mixed between an urge to show some other consequential fact as well as to impugn the defendant's character.")

[72] U.S. Constit. amend. V.

[73] Mot. 7.

[74] Mot. 8.

[75] Trial Tr. vol 4, 34.

¶26    The argument that Defendant was aware of the murder charge now appears for the first time in a Motion filed by the People after an unsuccessful trial. Not only is this not evidence, but it is also suspect. The Court is mindful that having failed to convince a jury the first time, the People may now seek to introduce this evidence to bias the jury. Further, the mere fact that Defendant had a prior conviction is not in and of itself evidence of a threat, the Court must be satisfied this was in fact communicated to the victim. Lastly, a review of the Trial Transcript shows that at no point on cross-examination did the defense ever attack the victim's testimony that she feared or was afraid of the Defendant.[76] Her credibility on this issue did not appear in contention. Thus, until evidence is proffered that the victim was aware of the Defendant's prior conviction and that this knowledge played a role in the alleged events, or until her testimony as to her reasonable fear of the Defendant is attacked, prematurely granting admission would violate the requirement of 404(b) that the issue be *actually* contested.

### 3. The Prejudicial Balancing Test

¶27    Assuming that the People are able to overcome this hurdle, and, through testimony, offer a proper foundation that the victim knew of the Defendant's conviction and that this played a role in her acquiescence, or assuming that the victim's credibility as to her reasonable fear of the Defendant is attacked, the People still must satisfy the balancing test outlined in 404(b): "the probative value of such proof, supported by specific facts and circumstances, substantially outweighs its prejudicial effect."[77] This test reiterates and incorporates V.I.R. EVID. 403.[78]

¶28    The Virgin Islands Supreme Court explained in *Morton v. People of the Virgin Islands*[79] that "the probative value of proposed evidence should meet at least two distinct requirements: '(1) [t]he evidence must be probative of the proposition it is offered to prove, and (2) the proposition to be proved must be one that is of consequence to the determination of the action.'"[80] The Virgin Islands Supreme Court further elaborated in *Mulley v. People of the Virgin Islands*[81] that "'[t]he term 'unfair prejudice,' as to a criminal defendant, speaks to the capacity of some concededly relevant evidence to lure the factfinder into declaring guilt on a ground different from proof specific to the offense charged'"[82] and that "[b]ecause 'all probative evidence is prejudicial to a criminal defendant . . . to warrant exclusion . . . its probative value must be slight in comparison to its inflammatory nature.'"[83]

¶29    While the People assert in their Motion that when a "prior conviction supports an element of the crime charged, the value of the evidence to the fact-finding duty substantially outweighs

---

[76] Trial Tr. 174-228.

[77] V.I.R. EVID. 404(b)(2).

[78] V.I.R. EVID. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by . . . unfair prejudice[.]")

[79] 59 V.I. 660 (V.I. 2013).

[80] *Id.* at 667 (quoting *United States v. Hall*, 653 F.2d 1002, 1005 (5th Cir. 1981)) (citations omitted).

[81] 51 V.I. 404 (V.I. 2009).

[82] *Id.* at 411-12 (citing *Old Chief v. United States*, 519 U.S. 172, 180).

[83] *Id.* at 412 (citing *United States v. Garner*, 281 Fed. Appx. 571, 575 (7th Cir.2008)) (citing another source).

any danger of unfair prejudice" they cite merely persuasive authority.[84] Indeed, the Virgin Islands Supreme Court has recognized in *Morton* that the 403 balancing test is very "fact specific," does not lend itself "to broad *per se* rules," and must be determined by the context of the facts and arguments presented.[85]

¶30    In a recent case from the Virgin Islands Supreme Court, *Celestine v. People*,[86] the Virgin Islands Supreme Court ruled that the Court erred in admitting testimony from an officer that a teardrop tattoo indicates that the defendant had killed somebody in an unrelated case. The Virgin Islands Supreme Court stated that: "Nevertheless, we note that an allegation that the defendant previously committed an unrelated murder inherently 'appeals to the jury's sympathies, arouses its sense of horror, provokes its instinct to punish, or otherwise may cause a jury to base its decision on something other than the established propositions in the case,' which would make it unfairly prejudicial under Rule 403."[87]

¶31    In *Colon*,[88] the District Appellate Court for the Virgin Islands distinguished the prejudicial nature of the relatively tame prior bad act in that case — stealing money using forged withdrawal slips — with more serious crimes: "Colon was charged with white collar crimes, which, although illegal, do not tend to inflame juror's emotions to the same extent as violent crimes such as the rape of a child or the continuous abuse and eventual murder of a spouse."[89] These two cases illustrate that admitting a prior murder conviction against a criminal defendant is a high bar, and is perhaps too unfairly prejudicial when the murder is unrelated to the crime at hand.

¶32    Finally, in *United States v. Scarfo*,[90] the Third Circuit found evidence of prior murders committed by the defendant, a boss of the Philadelphia La Cosa Nostra crime family, to be acceptable in a single extortion case.[91] The Third Circuit admitted such evidence so that the jury could better understand the testimony of two witnesses, mobsters who feared retaliation and had extensive criminal backgrounds.[92] The Third Circuit also highlighted that "[t]he district judge here commented that evidence of the defendant's participation in various murders would normally be excluded as irrelevant and unduly prejudicial in a trial for a single extortion scheme. However, in

---

[84] Mot. 9 (citing *United States v. Battle*, 774 F.3d 504, 511 (8th Cir. 2014)).

[85] *Morton*, 59 V.I. at 667 (citing *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008)).

[86] S. Ct. Crim. No. 2017-0066, __ V.I. __, 2020 WL 3270737, at *1 (V.I. June 17, 2020).

[87] *Id.* at ¶ 14.

[88] 30 V.I. 119 (D.V.I. App. 1994).

[89] *Id.* at 123.

[90] 850 F.2d 1015 (3d Cir. 1988)

[91] *Id.* at 1020.

[92] *Id.* ("The witnesses' unsavory mores were hardly likely to inspire confidence in their truthfulness and, therefore, it was important for the jury to realize that Caramandi and DelGiorno had been granted immunity for the very murders that they asserted Scarfo had ordered. Moreover, Caramandi's belief that he had been threatened by Scarfo and his fear that his daughter's life was in jeopardy were probative of his motives to testify. Similarly, DelGiorno inferred from the conduct of other organization members that he, too, had been marked for death, a realization that prompted him to approach the authorities and arrange for cooperation.")

view of the unusual circumstances in this case, the judge concluded that such exclusion would be prejudicial to the government."[93]

¶33    It is worth noting that, besides the non-binding Eighth Circuit decision *Battle* referenced above in footnote 90, *Scarfo* is the sole case the People rely on. The People in their Motion argue that the reasons presented in the *Scarfo* case are the same reasons they seek admittance of the Defendant's prior murder.[94] The People state that admitting evidence of prior murders so that the jury may "better understand[ ] the witnesses' testimony and for the jury to understand why the witnesses acted the way they acted in fear of death to themselves and family members" are "the same reasons presented in the instant matter."[95]

¶34    However, this reading of *Scarfo* oversimplifies and misconstrues the facts in that case. The prosecution in *Scarfo* needed to explain why such unsavory characters could be relied on, to show why they had turned government witness, and why acts of extortion they had committed could be attributed to Scarfo as they were done in subservience of and under the direction of him.[96] Additionally, the Third Circuit stated: "That Scarfo had such tight control over an organization capable of executing those who incurred his displeasure was obviously an essential fact the jury needed to evaluate in considering the extent to which fear swayed the two witnesses. That the witnesses themselves had participated in the slaying of compatriots accused of disloyalty to the crime family tended to give credence to their dread that they were slated for the same fate."[97]

¶35    The situation of the witnesses in *Scarfo* is clearly not the same to the case at hand. It is not the People's contention that the witnesses' are fearful to take the stand, that the victim and her mother are unsavory characters whose credibility is inherently damaged by their past actions, or that there are past crimes committed by them and the Defendant which are necessary to prove a criminal racketeering scheme. In contrast here, the Defendant's murder charge would be probative of explaining why the victim acquiesced and did not fight back, why the victim did not tell anyone except for finally her boyfriend, why the victim was terrified of the Defendant, and how specifically the Defendant accomplished the elements of intimidation. Thus, it is probative of facts of consequence – the victim's fear and the way the Defendant accomplished the crime. While it

---

[93] *Id.*

[94] Mot. 9.

[95] *Id.*

[96] *Id.*

("Caramandi and DelGiorno had extensive criminal backgrounds. The revelation of these histories would necessarily undermine the jury's willingness to believe the witnesses, particularly if the government were barred from full disclosure . . . In instructing on the proper use of other crimes evidence, the judge explained that the testimony could be used to assess the nature of the relationship among Caramandi, DelGiorno, and defendant.

"It is a position of the Government that Caramandi and DelGiorno were subordinates within this carefully organized and structured organization; that they did Mr. Scarfo's bidding; [that] they never would dream of doing anything this large without his approval; and that the tapes and other evidence in the case corroborate their testimony to the effect that he was involved and did approve.")

[97] *Id.*

does not help explain why the victim is testifying, it does lend credence to both the victim and her mother's testimony as to why they acted as they did.

¶36 A prior unrelated murder may be likely to inflame the passions of the jury. That in the prior trial, the People were able to convince jury members that the victim was credibly afraid of the Defendant based on her testimony of beatings and domestic violence suggests such evidence is not truly "necessary" to prove reasonable fear, as the People assert.[98]

¶37 Yet, if the prior crime was in fact wielded as a threat by the Defendant against the victim and was known by the victim's mother, it would go a long way in explaining the victim's accession on the night of the crime, her years of silence, the mother's actions in hiding in the bathroom and pretending to call a taxi, and the note allegedly written by the Defendant. The statement in the note that the Defendant will "go for everyone" and leave no one alive becomes more than an idle threat, and helps to explain why the victim finally acknowledged to her mother what was happening to her.[99] Rule 404(b) is meant to prevent unfair prejudice – but in the instant case it would be unfair to allow the Defendant to use his prior crime as a bludgeon against the victim and then hide behind the rule as a shield.

¶38 Finally, any prejudice that may arise can be addressed with a jury instruction that the Defendant has paid his debt to society by his incarceration, and that the prior murder should only be considered for the purpose which the People actually use it for in trial – to bolster the victim's damaged credibility or to help establish the elements of intimidation or reasonable fear.

## IV. CONCLUSION

¶39 The Court is generally skeptical that prior crimes are not truly being offered by the People to impermissibly sway the jury, particularly when the prior crime was wholly unrelated to the victim and is of a highly inflammatory nature. The Court also notes that the Virgin Islands Rules of Evidence require that the issue for which the crime is being proffered be actually in contention in the case. A review of the transcript and witness statements casts some doubt as to whether the People's assertion, that the Defendant's prior crime was the reason for the victim's fearfulness, is in fact true. Finally, the Court notes that this case has already gone to trial, and some members of the jury were swayed by the People without this evidence being necessary.

¶40 However, the Court also recognizes that proof of the People's claim may be readily rendered through appropriate testimony, and that the issue of the victim's credibility or the reasonableness of her fear may easily arise during trial. The Court also recognizes that in the instant case, assuming the Defendant did indeed communicate his prior criminal history to the victim, such history would be highly relevant and probative of key elements of the People's case. The Court is also mindful that such evidence may be limited to the proper purpose by jury instruction.

---

[98] Mot. 10.
[99] Trial Tr. vol. I, 167-68.

*People of the Virgin Islands v. Leroy Hodge*
CASE NO. ST-2015-CR-00331
**Memorandum Opinion and Order**
**Page 13 of 13**

2020 VI Super 95U

¶41     Accordingly, it is hereby

**ORDERED** that the Court **RESERVES** ruling on the People's Motion *In Limine* to Admit Testimony of Defendant's Prior Crime pending testimony at trial in this matter; and it is further

**ORDERED** that a copy of this Memorandum Opinion and Order shall be directed to Attorney Clive Rivers; Assistant Attorney General Natasha L. Baker and Assistant Attorney General Nadja Harrigan.

DATED: 11|19|2020

**DENISE M. FRANCOIS**
Judge of the Superior Court of the Virgin Islands

**ATTEST:**

**TAMARA CHARLES**
Clerk of the Court

BY: _____
**LORI BOYNES**
Chief Deputy Clerk    11 / 19 / 2020